Railway Company *v.* Mahoney, Adm'x.

RAILWAY COMPANY *v.* MAHONEY, Adm'x.

(*Knoxville.*    November 1, 1890.)

1. RES ADJUDICATA.    *Language of judgment limited to the matter decided.*

A judgment is *res adjudicata* only as to matters in issue, though its
language undertakes to embrace and decide more.

Case cited and approved: Sanders *v.* Logue, 88 Tenn., 359.

2. SAME.    *Case in judgment.*

Judgment of this Court determining that it is erroneous to dismiss an
administrator's suit upon demurrer for want of averment in the
declaration that the County Court had jurisdiction to appoint him,
does not preclude subsequent attack upon his representative character
by proper plea, although the entry of record undertakes to determine
that "the validity of plaintiff's letters of administration is not open
to attack in this suit."

Cases cited and approved: Cheek *v.* Wheatly, 11 Hum., 555; 11 Ired.,
296; 4 Denio, 85.

3. ADMINISTRATION.    *Collateral attack upon appointment of personal representative.*

An administration, granted by a County Court of this State upon the
estate of an intestate whose domicile at the date of his death was in
Tennessee, cannot be collaterally attacked by plea which admits
these facts, and denies the plaintiff's representative character upon
the sole averment that the intestate resided at the date of his death
in a county other than that in which the administration was had.
The County Court having general jurisdiction in such case, its de-
termination that the jurisdictional facts exist is conclusive upon col-
lateral attack, and its judgment need not recite these facts.

Case cited and approved: Brien *v.* Hart, 6 Hum., 131.

Cited and distinguished: D'Arusment *v.* Jones, 4 Lea, 251.

Railway Company *v.* Mahoney, Adm'x.

4. SAME. *Same.*

But the plaintiff's representative character may, in a proper case, be put in issue by a proper plea of *ne unques administrator ;* and this plea is in bar, and may be presented with the general issue.

Cases cited and approved: Cheek *v.* Wheatly, 11 Hum., 555; 11 Ired., 296; 4 Denio, 85.

5. SUPREME COURT PRACTICE. *No reversal if judgment is correct though reasons are erroneous.*

A correct judgment will not be reversed, although the lower Court assigned insufficient reasons for its rendition.

6. SAME. *Rule as to setting aside verdict upon the facts.*

Verdict of jury will not be disturbed by this Court where there is any legitimate evidence to support it, there being no other error.

Cases cited: Jones *v.* Jennings, 10 Hum., 428; Dodge *v.* Brittain, Meigs, 85; Pettitt *v.* Pettitt, 4 Hum., 191; Walker *v.* Galbreath, 3 Head, 315; Nance *v.* Haney, 1 Heis., 177; Morris *v.* Swaney, 7 Heis., 602; Tate *v.* Gray, 4 Sneed, 591; England *v.* Burt, 4 Hum., 399; Nailing *v.* Nailing, 2 Sneed, 630; Vaulx *v.* Herman, 8 Lea, 683; Turner *v.* Turner, 85 Tenn., 387.

7. PLEADINGS AND PRACTICE. *Amendment of declaration not error, when.*

Amendment of declaration, upon leave of Court, so as to change the defendant's name from *"railroad company"* to *"railway company"* constitutes no error, especially where there has been no plea of misnomer but an appearance by defendant and trial upon the merits.

8. SAME. *Amendment of declaration relates to commencement of suit, when.*

Amendment of declaration which does not introduce a new and different cause of action, but merely supplies facts omitted in statement of the original cause of action, relates to commencement of the suit, and is not barred if the suit was brought in time, though the statute of limitations had run when the amendment was made.

Case cited and approved: Railroad *v.* Foster, 10 Lea, 351.

9. PRACTICE. *As to setting aside a third verdict upon the facts.*

The statute providing that "not more than two new trials shall be granted to the same party in an action at law, or upon trial by jury of an issue of fact in equity," deprives the trial Judge of any power

Railway Company *v.* Mahoney, Adm'x.

to set aside the third verdict of a jury upon the sole ground that the evidence is *insufficient* to support it, where two former verdicts in the same case have been set aside upon motion of the same party for that cause alone.

Code construed: §3835 (M. & V.); §3122 (T. & S.).

Cases cited and approved: Malone's Lessee *v.* Deboe, 4 Hay., 259; Trott *v.* West, 10 Yer., 499 (S. C., Meigs, 163); Turner *v.* Ross, 1 Hum., 16; Wilson *v.* Greer, 7 Hum., 513; Ferrell *v.* Alder, 2 Swan, 77; Railroad *v.* Hackney, 1 Head, 169; Whitemore *v.* Haroldson, 2 Lea, 313; Caruthers *v.* Crockett, 7 Lea, 91; Burton *v.* Gray, 10 Lea, 581; Knoxville Iron Company *v.* Dobson, 15 Lea, 417; Railroad *v.* McKemy (oral opinion at Knoxville, September Term, 1887).

10. SAME. *Same.*

But this statute has no application to a case in which there is *no evidence* to support the verdict, and in such case the trial Judge may set aside even a third or any subsequent verdict of a jury in the same case and upon motion of the same party.

Case cited and approved: 134 U. S., 614.

11. SAME. *Same.*

The allegation that there is *no evidence* to sustain the verdict of the jury cannot be successfully maintained "if the conclusion does not follow, as a matter of law, that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish."

12. CONSTITUTIONAL LAW. *Statute forbidding Courts to set aside third verdict of jury constitutional.*

The statute forbidding Courts to set aside third verdict of jury when thus construed, is constitutional.

Constitution construed: Art. II., Sec. 2; Art. I., Secs. 6, 8.

---

FROM KNOX.

---

Appeal in error from Circuit Court of Knox County. S. T. LOGAN, J.

D.. H. POSTON, W. M. BAXTER, HENDERSON & JOUROLMON for Railway Company.

WAT M. COCKE, and INGERSOLL & PEYTON for Mahoney.

SNODGRASS, J. The husband of defendant in error was an engineer in the service of the Memphis and Charleston Railroad Company. While in such service he was killed on December 25, 1886, by the derailing of his engine.

His widow was appointed administratrix of his estate by the County Court of Knox County, and brought this suit in the Circuit Court for $20,000 damages against the East Tennessee, Virginia and Georgia Railway Company, alleging that said company was the lessee and running and operating the road on which her husband was killed, and that such killing was occasioned by the negligence of said company, acting through its officers and servants, the superiors of deceased.

There were two trials below, and verdicts in favor of the plaintiff. Both were set aside by the Judge because not sustained by the evidence. Finally the case was dismissed on demurrer of defendant, because the declaration did not sufficiently show that the County Court of Knox County had jurisdiction to appoint the administratrix who was suing herein.

The plaintiff appealed, and at the last term of this Court the judgment was reversed and the case remanded for further proceedings.

In the judgment here reversing that below it is recited that "the validity of plaintiff's letters of administration is not open to attack in this suit," and in the subsequent proceeding in the Court below this recital was treated as an adjudication of the question which had been presented, as well as of that which the defendant attempted subsequently to present by plea denying the validity of the appointment, upon the ground that deceased resided in Tennessee at the time of his death but had no residence in Knox County. It is argued here that such recital in the judgment is *res adjudicata.*

This position is incorrect. As said in the case of *Sanders* v. *Logue,* 4 Pickle, 359, "the precise verbiage of decrees cannot always be noticed or shaped by any Court in the very nature of things under our practice." If the language used makes the judgment broader than the point in decision permitted, the effect of it is limited to that point, as was decided in that case and has been decided in numerous others not necessary to cite.

The point in issue, and which the Court was determining, was whether a suit of an administratrix could be dismissed on demurrer because the declaration did not show that the County Court of Knox County had jurisdiction to appoint her.

The Court determined this question negatively, and reversed. No written opinion was given, because it was deemed wholly unnecessary. No declaration has to show affirmatively that the County Court appointing an administrator who brings a

suit had jurisdiction to appoint him in every suit
he may bring requiring a declaration. It is al-
ways sufficient to aver the representative character;
and if it is averred, it is obvious that the pleader
need not go further and "sufficiently show the ju-
risdiction of the appointing Court." This propo-
sition, never having been controverted in any opin-
ion of this Court or any other, we thought too
plain for controversy, particularly when our Court
had held that on a mere averment of the repre-
sentative character the presumption of the validity
of the appointment was so strong that a · plea de-
nying it would have to traverse every ground upon
which such appointment might have been lawfully
made by a County Court (*Hale* v. *Kearly*, 8 Bax.,
50, 51)—the exact converse of the proposition that
the declaration must affirmatively show that the
appointment was lawfully made.

The Court having for this reason determined
this question without writing that which it was
supposed every one would deem superfluous, the
decree was entered, and it seems that the language
employed, instead of showing that the validity of
the letters of administration was not open to in-
quiry in this suit because of the failure to suffi-
ciently show the jurisdiction of the County Court,
states that such validity is "not open to attack in
this suit." The general terms used are therefore
too broad, and are in their meaning and effect
limited to the point in issue and then being de-
termined, according to the principle of the Logue

case referred to. In this view, the question whether the language used in the judgment was inadvertent in its preparation or express from the Court is immaterial. The result is the same. The decision was as stated and no more—could extend no further.

It follows, then, that the defendant was not cut off from any contest as to the representative character of the plaintiff, and a proper plea denying that plaintiff was administratrix might still be entertained after the reversal (*Cheek* v. *Wheatly*, 11 Hum., 555), as such proper plea of *ne unques administrator* is not in abatement, but in bar (*Shown* v. *Barr*, 11 Ired., 296), and may be pleaded with the general issues (*Flynn* v. *Chase*, 4 Denio, 85). See 2 Williams on Executors, p. 1595–1654 and notes, 4 Am. Ed.

The defendant filed a plea which does not deny that plaintiff was appointed administratrix by the County Court of Knox County, but "traverses the allegation that she was the *legal representative,* and avers that at the date of the death of Thos. Mahoney his usual place of residence was in Shelby County, Tennessee, and that at that date he had no fixed residence in Knox County."

Not having denied in this plea that the County Court of Knox County had appointed plaintiff as the declaration averred and letters of administration (of which profert was made, oyer craved, and letters set forth) showed, that fact is admitted in the plea. Code, § 2907 (M. & V., 3620).

The only issue tendered by the plea was that the appointment as made was invalid because of the non-existence of certain facts upon which the jurisdiction of the County Court to make it depended.

This plea was, on motion of plaintiff, stricken out. The reason assigned by the Court for striking out was that the question was settled by judgment of this Court that such defense could not be made. We have seen that this was not correct; but if the action of the Circuit Judge was correct, however erroneous the reason assigned for it may be, the judgment will of course be sustained.

This brings us to the question whether such question can be raised by plea, and the appointment of an administrator collaterally attacked upon averment of facts showing that no residence of an admitted intestate (residing at time of death in Tennessee) was in the county wherein the appointment was made by the County Court.

It has long been settled in this State that as to matters of administration the County Court is a Court of general jurisdiction. *Brien* v. *Hart,* 6 Hum., 131.

In consequence it follows—first, that its judgment, exercised in the appointment of an administrator, need not recite the facts upon which it was made; and, second, that, being authorized to determine for itself the existence of the facts which authorize it to appoint an administrator on

the estate of an intestate resident of Tennessee, its determination of such facts is conclusive in any collateral attack in another Court.

Of course the rule could not extend to a case where no appointment could be legally made by any Court; as, on estate of a living man. 4 Lea, 251. The plea, therefore, presented no defense, and was properly stricken out.

The case was then tried on its merits on issues raising all the questions to be hereinafter noticed, before a special jury (demanded by defendant). This trial resulted in a third verdict against defendant for $4,750. Motion for a new trial being overruled, defendant appealed, and assigned errors. In addition to the question already discussed, the errors assigned are:

*First.*—That it was error to allow an amendment of writ and declaration so as to substitute *railway company* for *railroad company.*

The writ does not appear to have been so amended. The supplied writ in the record runs against the railway company. The declaration was amended, but it is well settled that such amendment is proper. Besides, it was immaterial, there being no plea in abatement for misnomer. Caruthers' Hist. Lawsuit, Sec. 189. And, finally, the objection was waived by appearance and trial on the merits.

*Second.*—It was error to render judgment against the East Tennessee, Virginia and Georgia Railway Company, because there was no proof to show it

was operating the Memphis and Charleston Road, or had plaintiff's intestate ·in its employment when killed.·

There was evidence to this point, and the jury was authorized to pass upon it, and has done so. The verdict, under the rule, cannot be disturbed where there is any legitimate evidence to sustain it.

*Third.*—It was error to allow plaintiff to amend her declaration on June 24, 1889, so as to insert an averment .that her husband was "temporarily residing in Memphis, but with his home in Knoxville" when killed, because the killing was on December 25, 1886, and suit was barred when the amendment was made, more than a year having elapsed.

We have already seen that this amendment was immaterial; but had it been material, it would have · been authorized at that date, the statute of limitations having nothing to do with it. The suit had long since been properly brought, and within the year, by and against proper parties. Amending the declaration did not affect the pendency of the suit nor originate a new one. It but added an averment in a case already stated. *Railroad* v. *Foster*, 10 Lea, 351.

*Fourth.*—That "the Court erred in not setting aside the verdict and granting a new trial, for having found 'that on the merits he was of the opinion, as before, that the death of the decedent had been caused, proximately, by his own negligence in running his engine too rapidly, but

as two juries had passed upon same facts, and two new trials had been granted, the Court did not feel justified in granting another new trial under the statute and the decisions of our Supreme Court.' Record, 219. This being so, he should have vacated the verdict and judgment—

"1. Because it was his prerogative and duty, under such circumstances, to have granted a new trial, as the statute to the contrary trenches upon the judicial power, and is void. Art. II., Sec. 2, Constitution of 1870.

"2. The statute preventing the Court in jury trials from setting aside the third verdict is unconstitutional and void, being violative of Article I., Sections 6 and 8, of the Constitution of Tennessee, and the fourteenth amendment to the Constitution of the United States, which provides: 'No man *  *  * shall be deprived of his life, liberty, or property but by the judgment of his peers or the law of the land.' For all of which and other good and sufficient causes, plaintiff in error asks a reversal."

This brings us to a consideration—or, rather, reconsideration, for the question has been often before the Court—of our statute, to which the Circuit Judge referred, providing that "not more than two new trials shall be granted to the same party in an action at law or upon trial by jury of an issue of fact in equity." Code, § 3122 (T. & S.).

The section of the Code quoted is the Act of

21—5 p

1801, Chapter 6, Section 59. It has been often before the Court for construction — the first time, so far as we can find from our reported cases, in 1817. The question there made was that the verdict was contrary to the law and evidence. It was the third verdict, and the Court held that the motion "to set aside this third verdict of a jury on a matter properly before them ought not to have succeeded." The Court said: "The evidence, if not doubtful, perhaps preponderated against the verdict, but it was the province of the jury to determine for themselves." *Malone's Lessee* v. *Deboe*, 4 Hay., 259.

The next reported case found was in 1837 or 1838. It appears in 10 Yerger as of December Term, 1837, and in Meigs' Report as of December Term, 1838 — *Trott* v. *West, Moss & Co.*, 10 Yer., 499; Meigs, 163. In that case the Court construed the Act to mean "that where the facts of the case have been fairly left to the jury upon a proper charge of the Court, and they have twice found a verdict for the same party, each of which having been set aside by the Court, if the same party obtain another verdict in like manner, it shall not be disturbed. But this Act did not intend to prevent the Court granting new trials for error in the charge of the Court to the jury, for error in the admission or rejection of testimony, for misconduct of the jury, and the like."

While, as we have seen, this appears to be the second reported case on the subject, the Court

added: "This we should consider the proper construction of the Act if we were now, for the first time, called upon to expound it; but such having been the uniform practice of the Courts since its passage, we are the better satisfied with this view of it." And so this construction seems to have been often given it in oral or unreported cases.

The Act was again so construed in *Turner* v. *Ross*, 1 Hum., 16, and in the following cases: *Wilson* v. *Greer*, 7 Hum., 513; *Ferrell* v. *Alder*, 2 Swan, 77; *E. T. & Ga. R. R. Co.* v. *Hackney*, 1 Head, 169; *Whitemore* v. *Haroldson*, 2 Lea, 313; *Caruthers* v. *Crockett*, 7 Lea, 98; *Burton* v. *Gray, Kirkman & Co.*, 10 Lea, 581; *Knoxville Iron Company* v. *Dobson*, 15 Lea, 417.

These cases all agree in holding the rule to be as laid down in the 10 Yerger case. Four of them are exceptional in points to be noted as deciding something more or beyond the others. The cases in 1 Humphreys and 2 Swan settled that, if the record was silent as to the reasons upon which the first two new trials had been granted, the Court would presume that they were granted upon the merits, and a third trial would be refused; and if such new trials were granted for other reasons—as for error in charge of Court and the like—and party obtaining them does not want to be precluded from a third, under the statute he must make the record show the reasons for the action of the Court granting them when done. It could not otherwise be shown.

In the 10 Lea case it was said that where the jury has found "more than twice, in the same case, in favor of the same party, the power of the Court is exhausted, and the verdict, although it may be against the law and justice of the case, must stand." Respecting the verdict then being considered, it was added: "Whether such was the case with this verdict is immaterial." What the evidence was in that case was not stated, nor that it was insufficient. The comment, therefore, was that of the Judge delivering the opinion expressing his view of the result of former decisions. In fact, there was nothing in that case which extended the effect of the statute beyond the other cases.

The 15 Lea case was to the same effect as the others on the point considered. Referring to the refusal of the Circuit Judge to grant a new trial because the evidence was *insufficient* to support the verdict, the Judge delivering that opinion said: "If the Court has, in the same case, set aside, upon the motion of the same party, the verdicts of two juries, upon the ground that the evidence is not sufficient to sustain them, the power of the Court is at an end to grant another new trial upon the facts or merits."

This case was explicitly upon the point that the Circuit Judge could not grant a new trial because the evidence was *insufficient*. The point was not made in the case, nor in any other preceding it, that there was *no evidence* to sustain the verdict,

Railway Company *v.* Mahoney, Adm'x.

and it did not adjudge this, as the others had not, though the language used in several of the cases had been as broad as could be applied to the points in judgment in each case.

In all of them the statute was construed so as to show what it meant as a whole, and in doing so all adopted the construction first fully stated by Judge Green in the 10 Yerger case, which we have quoted; and such is a correct rule in reference to the power of a Court to construe a statute—that is, whenever the statute is involved and construction required, the Court may, and generally should, state the proper construction of the statute, and then say whether, thus construed, it applies to the particular case. It may of course decline a construction, and say that the case before the Court does not come within its meaning; but because it may do this, and thereby avoid saying what the statute does mean, does not affect its right and power to construe it when involved, and then apply it to the case in hand, or show that the case is not within the construction. Such was the rule acted upon by the Supreme Court of the United States on this question in a case to be cited further on in this opinion.

Judge Green, in the case of *Trott* v. *West, Moss & Co.*, just referred to, in 10 Yerger, construed the statute now being considered to apply to the granting of new trials upon the facts or merits, where the facts had been fairly left to a jury under a proper charge, and not to apply to

errors in charge of the Court, or in the admission or rejection of testimony, or for misconduct of the jury, and the like, and this in a case where there was no objection to the verdict because of any error of Court or misconduct of the jury, and not even a bill of exceptions containing all the evidence.

But it is not necessary to pursue this discussion. We have seen the rule under which it was so construed, and that it properly might have been done as it was done, and may leave it for more important matter.

Returning to the 15 Lea case: There it was further held that the statute applied to this Court as well as to the inferior Courts.

Thus the law stood construed when it again came before the present Court for construction at its September Term, 1887, in case of *East Tennessee, Virginia and Georgia Railway Company, in error,* v. *McKemy.*

The majority of this Court, after determining that the evidence was insufficient to support the verdict, held that it was bound by the statute to permit it to stand, being a third verdict of which the other two had been set aside as founded on insufficient evidence.

The statute was again applied by us at Jackson, in 1889, in the case of *Louisville and Nashville Railroad Company, in error,* v. *Woodson,* now reported in 134 U. S., 614 (Lawyers' Coop. Ed., Book 33, page 1032). In that case the Court

determined that there was *no evidence* to sustain the verdict, but being a third of which the first and second had been set aside on the merits, the statute was held to prevent reversal.

The railroad company carried the case before the Supreme Court of the United States, insisting that the statute was void under the fourteenth amendment to the Constitution of the United States, providing that no State shall pass any law which shall deprive any person of life, liberty, or property without due process of law—this Court, after giving the Act the construction stated, having adjudged that it was not in conflict with such amendment to the Constitution. This was the first time this constitutional objection was made to this statute, as appears from the reported cases cited.

The Supreme Court of the United States held that the Act bore no such construction. It said (after quoting many Tennessee cases, including several of those we have cited): "From these decisions it is clear that in Tennessee, as elsewhere, although the jury are the judges of the facts, yet the Judge has power to set aside the verdict when in his judgment it is against the weight of the evidence, but that that supervisory power cannot be exercised under the statute when the triers of the facts have three times determined them the same way. This manifestly refers to a state of case where, in the opinion of the Judge, the verdict should have been otherwise than as rendered,

because of the *insufficiency* of the evidence to sustain it, but not to a case where there is no evidence at all.   *   *   *

" Tested by this rule, whenever the statute is applied, it must be upon the assumption that although the Court would have found a different verdict because of the weakness of the evidence, yet there was some evidence tending to establish the cause of action.   *   *   *

" We can percieve nothing in the statute *thus applied* which amounts to an arbitrary deprivation of the rights of the citizen, and concur with the Supreme Court of Tennessee that this Act, which had been in force for more than sixty years before the adoption of the fourteenth amendment, was not invalidated by it."

The Supreme Court of the United States had already, as shown in quotation, decided that the Act could not be construed to mean that a third verdict must be sustained when there is no evidence to sustain it, and that our decisions construing it were not to the contrary up to the Woodson case, and that the statute must be applied to cases where there is some though weak evidence, before it came to the point of concurring with this Court in holding the Act valid; that is to say, it held the Act valid because it gave it a different and less obnoxious construction. It plainly showed the Act to be void in the opinion, if it had the construction which this Court had given it.

To meet the difficulty of agreeing in the result

on antagonistic opinions as to the construction, it held that the judgment of this Court that there was *no evidence* to support the verdict, did not mean what it said, but merely meant that "the jury ought not to have found the verdict that they did, and that the judgment of the Court below refusing to grant a new trial upon the facts would have been reversed but for existence of the statute which made it error to award it." "For," says that Court, "the statement in the judgment of affirmance ·of the Supreme Court of Tennessee is that the Court adjudges that there is *no evidence* to support the verdict of the jury," and, "if this were taken literally, it would follow that no re-covery *could be had.*"

We need not stop here to show that the lan-guage used in the judgment of this Court had its own meaning, and not that given it by the Su-preme Court of the United States. If we had intended to hold that there was *some* evidence to support the verdict, though not satisfactory, the statute would not have been applied at all in order to affirm it; for this Court has always, in-dependently of this statute, acted on the rule that it will not disturb the verdict of a jury, whether on a third, second, or first trial, if there is any evidence to sustain it. The judgment in that event would, therefore, have been affirmed without reference to the statute. Using unambiguous terms to express another and different meaning, it was thought · they were so plain as to be susceptible

of but one construction. Had they received it, the statute would have fallen, according to the plain meaning of the opinion. That opinion was conclusive of the question in the case, and settled the construction of the statute in opposition to the view there taken of it by this Court, holding, as it did, and correctly, that this case had gone further than any other on this question, and that the other cases meant no more than that the Judge could not set aside a third verdict where there was any evidence upon which it could be sustained, although he might think it weak or insufficient. We yield to that construction, as we must, and apply the statute thus construed in this case.

If, then, there was any evidence to sustain this verdict, the Circuit Judge could not have set it aside, and therefore correctly let it stand, although dissatisfied with it, because it was the third one in a series, of which he had set aside two on the ground that the evidence did not sustain them (it being his duty to have gone that far if dissatisfied with them upon the evidence); and we must affirm that action under the statute, because a third verdict cannot be set aside unless there is no evidence to sustain it—" if the conclusion does not follow, as a matter of law, that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish." It therefore follows that this Court cannot set aside such third verdict in favor of the same party because the Circuit Judge expressed dissatis-

faction with it. On the contrary, this is the very case to which the statute applies. If, upon a first or second trial, the Circuit Judge is dissatisfied, because the evidence does not preponderate in favor of the verdict, or does not support it, though there was some evidence upon which it might have been based, it is his duty to set it aside, and we will do so if it appears he did not approve it and yet permitted it to stand. But as to a third verdict, under the statute being considered, the rule is different. If there is any evidence to sustain it, he must allow it to stand because of the statute, and this is just and reasonable; for, if he might always set aside a jury verdict because he disagreed with the jury as to effect of the evidence, when there was evidence upon which different views might be taken, the Circuit Judge could prevent a result being reached; and so a verdict would or might always go for nothing. Some law was necessary to end this conflict of opinion. This law does that, and that only.

It follows that it is not reversible error for the Circuit Judge to refuse to set this verdict aside merely because he was dissatisfied with it; and the fourth assignment of error is bad.

The statement of the Circuit Judge was not that there was no evidence to sustain the verdict, and the objection to it was not to this effect, nor is there any assignment that the verdict is not sustained by *any* evidence.

His statement was merely that he was of opinion that "the death of the intestate had been proximately caused by his own negligence." This was the conclusion he came to from the evidence. He does not state that there was no evidence upon which the jury could have come to a different conclusion, and, as we have seen, there is no such question elsewhere or otherwise made in this record.

The plaintiff in error has elected to put its case upon the necessity of the Circuit Judge's setting aside the verdict because he was not satisfied with it upon the evidence, it being his duty ordinarily to set aside a verdict where the evidence preponderates against it (*Tate* v. *Gray*, 4 Sneed, 591), and also where, upon the evidence, he is not satisfied with it (*England* v. *Burt*, 4 Hum., 399; *Nailing* v. *Nailing*, 2 Sneed, 630; *Vaulx* v. *Herman*, 8 Lea, 683; *Turner* v. *Turner*, 1 Pickle, 387).

This duty imposed upon him is all the more imperative because of the rule of this Court that after a verdict which has met the approval of the Circuit Judge, this Court will not reverse if there is any evidence to sustain it. See cases cited, and *Jones* v. *Jennings*, 10 Hum., 428; *Dodge* v. *Brittain*, Meigs, 85; *Pettitt* v. *Pettitt*, 4 Hum., 191; *Walker* v. *Galbreath*, 3 Head, 315.

And this always has been the rule, both before and since the case of *Nance* v. *Haney*, 1 Heis., 177, although in that case the Judge delivering the opinion criticized the language used on this point in some of the cases cited, and used instead

the terms "great preponderance of evidence against the verdict so that the Court can see clearly that the judgment of the law upon all the facts shown in the evidence is not that which the jury has found." This language as well as that in other cases was quoted, and no distinction drawn between the cases in *Morris* v. *Swaney*, 7 Heis., 602.

We have since repeatedly held that there was no distinction in cases where there was such a great or overwhelming preponderance of evidence against a verdict that the Court could *clearly see* that it was erroneous, and one where there was not any legitimate evidence to sustain it. For if there is legitimate evidence to sustain it, passed upon by the jury and Circuit Judge, we cannot *clearly see* that the verdict is wrong. We have therefore held that no difference in language used has made a difference in the rule, which ever was, and still remains, that this Court will not disturb such verdict if there is any legitimate evidence to sustain it. 1 Heis., 359; 10 Lea, 470; 1 Pickle, 389.

But while it was the duty of the Circuit Judge, upon a view of the evidence conflicting with that of the jury, to set the verdict aside, it is obvious that if there was no limit upon this power no verdict would ever stand, and of necessity there must be some way to end the case, notwithstanding such conflict of opinion. This Act was intended to settle it, and, in favor of the correctness of the conclusions of the three juries, to give to the verdict of the third, upon evidence

which in any proper aspect could sustain it, such weight that it could not be disturbed because different from that which the Judge would have deemed proper and approved on the weight of the evidence.

The question of difference in opinion had to be provided for and settled in some way. This is perhaps the best and least objectionable in which it could have been done. At all events it was within legislative power, and violated no provision of the Constitution, State or Federal.

The judgment upon this verdict cannot, therefore, on this assignment, be disturbed, and it must be affirmed with cost.