## CHAMBERS *v.* CHAMBERS.

### (*Jackson.* June 23, 1893.)

1. HOMESTEAD. *Widow's not assignable out of lands held by entireties.*

   Land deeded to husband and wife during the existence of the marital relation vests absolutely in the widow on his death, and she cannot be compelled to take homestead therein.

   Cases cited and approved: Jackson *v.* Shelton, 89 Tenn., 82; McRoberts *v.* Copeland, 85 Tenn., 211; Ames *v.* Norman, 4 Sneed, 683; Taul *v.* Campbell, 7 Yer., 319; Berrigan *v.* Fleming, 2 Lea, 275.

2. SAME. *Disallowed to widow for want of sufficient title in husband.*

   The husband has no such interest in land as will, upon his death, support his widow's claim to homestead therein, when his father purchased and paid for the land, and ever afterwards received its rents and profits and paid taxes thereon, but, being financially embarrassed, took title in the name of the son, who executed bond, obligating himself to convey to the father, upon his repayment of a stipulated sum advanced by the son for the purchase of the land.

3. SAME. *Costs of proceedings.*

   When the husband had apparent, but not real, title to lands, and his widow, believing his title perfect, has instituted proceedings for assignment of homestead out of same, but has failed by reason of the husband's want of title, the costs of such unsuccessful proceedings will be adjudged to be paid by the husband's administrator, and not by the widow personally.

4. SUPREME COURT PRACTICE. *Affirms correct decree.*

   This Court will affirm a decree correct in result, though put, by the lower Court, upon erroneous grounds.

FROM CARROLL.

Appeal from Chancery Court of Carroll County. A. G. HAWKINS, Ch.

Jo. R. Hawkins for Complainant.

L. L. Hawkins for Defendant.

Wilkes, J. Henry Chambers died in October, 1888, leaving his widow, Tellulah, and one son surviving him. At the time of his death he and his wife owned a residence and furniture, situate in Huntingdon, Tenn., and conveyed to them during the existence of their marital life, by Joe McCracken.

The consideration agreed to be given by them for the house and lot and furniture was $3,000, and of this amount $1,500 was unpaid at his death, and was a lien upon the house and lot and furniture.

R. P. Chambers, the father of Henry, administered upon his estate. A controversy soon arose between the father, R. P. Chambers, as administrator, and Tellulah, the widow, as to the ownership of the furniture, and an agreed case was made up and submitted to the Court to determine this question. In this agreed case it was by the Court determined that, inasmuch as the furniture was conveyed to the husband and wife during their married life, it passed to the widow, and became her property, upon the death of the husband, and did not pass to his administrator.

After the death of her husband the widow sold the Huntingdon house and lot for $2,250, and out of the proceeds paid off the incumbrance of $1,500, and now claims the remainder by virtue of her

survivorship of her deceased husband. Her husband, at the time of his death, was the apparent owner of certain other real estate, besides the Huntingdon house and lot, the title to which was vested in him alone, so far as appeared of record. The widow filed her petition in the County Court of Carroll County, asking to have homestead and dower assigned to her out of this real estate. That Court adjudged that she was entitled to homestead out of this real estate, and if the property exceeded $1,000 in value, then to dower out of the excess over $1,000, and appointed Commissioners to set the same apart.

These Commissioners assigned the entire property, exclusive of the Huntingdon lot, to the widow as her homestead, reciting in their report that it did not exceed $1,000 in value.

Pending the confirmation of this report, complainant filed the present bill enjoining the confirmation, and all other proceedings to set apart homestead and dower out of said lands, upon two grounds:

*First.*—Upon the idea that the widow was entitled to homestead in the Huntingdon house and lot, and, having sold the same and realized therefrom, after paying the incumbrance, as much as $1,000, she must take the same as her homestead, and was estopped to claim homestead in any other real estate belonging to her late husband.

*Second.*—That the real estate, beside the Huntingdon house and lot, which the Commissioners

were about to set apart to her as homestead, was, in truth and fact, not the property of the husband when he died, but was the property of complainant, his father, and held in trust for him by the son.

It was claimed in the bill that the property was bought by the father, and paid for, in the main, by him, but that, by agreement between the father and son, the title was taken to the son, because the father was, at the time, involved, and could not hold property in his own name; and that it was further agreed that the title should so remain in the son until such time as it could be safely vested in the father; and, also, until certain indebtedness of the father to the son could be paid and satisfied, the son thus holding the title to the property to secure the amount due him, and to protect the same from other creditors.

It was further stated in the bill that the indebtedness of the father to the son amounted, in 1883, to $1,858, and at that time the son executed to the father two bonds, conditioned to make title to the two pieces of property upon the payment of two certain sums, aggregating the indebtedness of $1,858. These bonds for title were signed by the son, and witnessed, but were never recorded, and were not made public or known to the widow until after her husband's death, and until the filing of this bill. Upon their faces they purport to be ordinary bonds for title, reciting the sale of the property by the son to the father for

a certain price, and providing that, on the payment
of that price, the son would convey the lands to the
father.    They were not signed by the son's wife.

The widow, defending this bill, insists that the
Huntingdon house and lot, conveyed by McCracken
to her husband and herself during their married
life, vested, upon his death, in herself absolutely as
his survivor, and that the other real estate was
the property of her husband when he died, and
not of his father, and that she was entitled to
homestead and dower out of the same, not having
joined in the bonds for title.

Much proof was taken to sustain the conten-
tions of the opposing parties.   On the hearing,
the Chancellor decreed that the widow was en-
titled to homestead in the Huntingdon house and
lot, which she and her husband owned together at
the time of his death; and reserved the question
whether she was entitled to homestead in the
other real estate until a reference could be exe-
cuted by the Master to ascertain whether the widow
had received, net, as much as one thousand dollars
out of the sale of the Huntingdon property.

This reference being executed, it appeared that
the net amount received by her from the sale of
the Huntingdon property, after paying off the in-
cumbrance, was as much as one thousand dollars,
and perhaps more; and, thereupon, the Chancellor,
in a final decree, held that the widow was not
entitled to any homestead or dower in the other
real estate.

While the final decree does not so recite upon its face, it is evident, when it is considered in connection with the former decree and proceedings thereunder, that homestead in the real estate outside of the Huntingdon house and lot was denied because the widow had already received its net value out of the proceeds of sale of the Huntingdon property.

From the decree of the Chancellor the widow appealed, and she has assigned errors:

*First.*—That the Chancellor erred in holding that the widow's homestead right attached, upon the death of her husband, to the Huntingdon property, and that she was required to take her homestead out of it.

*Second.*—In not holding that she was entitled to homestead in the real estate other than the Huntingdon property.

*Third.*—In enjoining the proceeding to allot homestead and dower out of this real estate under the County Court proceeding.

*Fourth.*—In holding that, inasmuch as the widow had received as much as $1,000 net out of the Huntingdon property, she could not have homestead out of any other property.

*Fifth.*—In taxing her with any costs incident to her attempt to obtain homestead and dower.

We are of opinion that the Chancellor erred in holding that the widow was entitled to or required to take homestead or dower out of the Huntingdon property. This property was deeded

to the husband and wife during the existence of the marital relation. They held it by entireties during their joint lives, and upon the death of either the survivor took the entire and absolute estate. In this case, upon the death of the husband, the entire and absolute title to the land vested in the surviving widow, and she took the same under the rules of law in such cases.

The husband's estate and all his interest in said lot ceased with his life, and after his death he had no estate in the lands out of which the widow could be required, or was even entitled, to take dower or homestead. *Ames* v. *Norman*, 4 Sneed, 683; *Taul* v. *Campbell*, 7 Yer., 319; *Berrigan* v. *Fleming*, 2 Lea, 275.

It is true that the homestead right of the husband attaches to lands thus held during his lifetime; but this will not prevent the entire property (upon his death before the wife) passing to the widow by right of survivorship, and not as a homestead. *Jackson, Orr & Co.* v. *Shelton*, 5 Pickle, 82; *McRoberts* v. *Copeland*, 1 Pickle, 211.

We have examined the record carefully upon the question raised as to the true ownership of the real estate other than the Huntingdon house and lot, and we are satisfied from the proof that this real estate is the property of the father and not of the son. It appears that the father bought it and paid for it, using some property of the son and borrowing some money from him for that purpose; that he has been in continuous use and

enjoyment of the property since its purchase, receiving its rents and profits, and paying taxes thereon; and we think the contention of the father in his bill as to this property is sustained by the proof. This being so, the widow of the son is not entitled to either homestead or dower out of the same.

The decree of the Chancellor refusing to allow homestead and dower out of this real estate is correct as to result reached; but based on the wrong ground, and we affirm the same in its results, and enjoin the proceeding to set apart to the widow homestead and dower out of this property by the County Court of Carroll County.

Inasmuch as the true state of the title to the real estate other than the Huntingdon property was withheld by complainants from the widow until the commencement of this litigation, she is relieved from all costs incident to her attempt, in the Court below and in the County Court and in this Court, to obtain homestead and dower out of said real estate, and the same will be paid by complainant out of the assets of the estate of Henry Chambers, which is being administered by him as insolvent.