BUTLER *v.* UNITED STATES B. & L. ASSOCIATION.    | 97  679
                                                    .110  665

(*Knoxville.*   November 13, 1896.)

1. CONSTITUTIONAL LAW.   *Act validating illegal contracts and titles of foreign corporations valid.*

Acts 1895, Ch. 119, validating contracts previously made and titles already taken by foreign corporations that had not, at the time, filed their charters or registered abstracts thereof, as required by Acts 1891, Chs. 95, 122, provided they had done so before the passage of the Act, does not impair, but sustains, the obligation of the contracts, and is constitutional and valid. (*Post, pp. 681–688.*)

Constitution construed: Art. I., Sec. 20.

Acts construed: Acts 1895, Ch. 119; Acts 1891, Chs. 95, 122; Acts 1877, Ch. 31.

Cases cited and approved: Shields *v.* Clifton Hill Land Co., 94 Tenn., 123; Brewer *v.* State, 7 Lea, 682; Cary-Lombard Lumber Co. *v.* Thomas, 92 Tenn., 593; 108 U. S., 488.

2. FOREIGN CORPORATIONS.   *Validating illegal contracts of.*

A mortgage executed to a foreign corporation before its compliance with Acts 1891, Ch. 122, requiring registration of its charter and filing of an abstract thereof, was validated where it subsequently complied with such requirements before the passage of Acts 1895, Ch. 119, providing that all contracts by foreign corporations which had engaged in business without first complying with such requirements, should be as valid as if they had been originally complied with, provided that only corporations which had already, in good faith, complied with such requirements should be entitled to the benefits of the Act.   (*Post, pp. 681–688.*)

Acts construed: Acts 1895, Ch. 119; Acts 1891, Ch. 122.

Cases cited and approved: Shields *v.* Clifton Hill Land Co., 94 Tenn., 123; 108 U. S., 488.

3. SAME. *Illegal contract validated, when.*

The rendition of a decree declaring a mortgage executed to a foreign corporation invalid because, at the time of its execution, such corporation had not complied with the requirements of Acts 1891, Ch. 122, as to registration of its charter and filing of an abstract thereof, does not deprive such corporation of the benefit of Acts 1895, Ch. 119, validating all contracts by such corporations, which was passed during the pendency of an appeal from such decree. (*Post, p. 688.*)

Acts construed: Acts 1895, Ch. 119; Acts 1891, Ch. 122.

4. SAME. *Illegal contract validated and declared superior to vendor's equity.*

A vendor of land by a deed containing a recital of the payment of the purchase money in full, to enable the purchaser to obtain a loan, secured by mortgage, on the land conveyed, cannot complain that a foreign corporation to whom the mortgage was made before its compliance with the requirements of Acts 1891, Ch. 122, for registration of its charter and filing of an abstract thereof, was not entitled to the benefits of an Act subsequently passed validating all contracts previously made by such corporations which had, at the time of its passage, complied with such requirements. (*Post, pp. 687, 688.*)

Acts construed: Acts 1895, Ch. 119; Acts 1891, Ch. 122.

## FROM WASHINGTON.

Appeal from Chancery Court of Washington County. JOHN P. SMITH, Ch.

J. B. Cox and ISAAC HARR for Butler.

A. R. JOHNSON for minor.

FAW & Cox for United States B. & L. Association.

BEARD, J.   In 1892 complainant sold and con-
veyed to one Sallie D'Armond a lot lying in the
town of Johnson City.   In the deed executed by
him to his vendee, he recited that the full amount
of the purchase money had been received by him,
when, as a matter of fact, only a part was paid,
while the balance was divided into installments fall-
ing due in one and two years from the date of the
transaction.   Some time thereafter, but during the
year 1892, Mrs. D'Armond, joining with her hus-
band, executed a mortgage of this property, to secure
a loan made to her by the defendant, the United
States Building & Loan Association, a corporation
organized under the laws of the State of Minnesota.
In 1894, after the maturity of the purchase money
obligations, this bill was filed to recover the same,
asserting a vendor's lien on the property and ask-
ing for a decree enforcing this lien, and also at-
tacking this mortgage as being void and inopera-
tive, upon the ground that at the time of its exe-
cution this defendant corporation had not complied
with the requirements of Ch. 122 of the Acts of
the session of 1891 of the Legislature of this
State, requiring registration of its charter in the
office of the Secretary of State, at Nashville, and an
abstract thereof in the Register's office of the
county within which the property was situated, and
asking that a decree be entered removing this
mortgage as an impediment in the way of the
clear and successful assertion of complainant's lien.

To this bill all proper parties were made de-
fendants. The heirs of Mrs. D'Armond (she hav-
ing died in the meantime) answered, denying the
existence of a lien as claimed by complainant, and
insisting that complainant had expressly waived it
at the time of delivering his deed.

The United States Building & Loan Association an-
swered, admitting that it was a foreign corporation,
and that at the time of making the loan to and
taking the mortgage from Mrs. D'Armond, it had
not complied with the requirements of this Act in
question, but averring that, in 1893, and prior to the
filing of the bill of complainant, it had done so,
and insisting that its mortgage was then a good and
enforceable instrument. At the same time the asso-
ciation filed a cross bill, repeating the averments of
its answer, and alleging that the mortgagor was in de-
fault, and asking that its mortgage might be foreclosed
under decree properly entered in this cause. Answers
to this cross bill were put in by the various parties
in interest, and, upon the issues thus made, the
cause was submitted to the Chancellor, who entered
a decree, in which he dismissed the original bill in
so far as it sought to enforce a vendor's lien, and
the cross bill of the defendant corporation, upon the
ground that its mortgage was void by reason of the
fact that at the time it was made the corporation
was in default in view of the requirements of the
Act of 1891. From this decree both complainants
and the association appealed to this Court. The

cause has been heard by the Court of Chancery Appeals, and that Court reversed the decree of the Chancellor, which disallowed a vendor's lien to complainant, Butler, but affirmed that part which declared void the mortgage made to secure the defendant association. The case is before us now upon an assignment of error by the United States Savings Association upon so much of said decree as declared its mortgage unenforceable and void.

At the session of 1895 of the General Assembly of this State, an Act (Ch. 119) was passed entitled "An Act to postpone the foreclosure of certain mort-gages or trust deeds, and to validate contracts heretofore made by foreign corporations in this State, where such corporations failed to comply with the requirements of Chs. 95 and 122 of the Acts of 1891, and Ch. 31 of the Acts of 1877, providing that any such corporation desiring to own property or to carry on business in this State, shall file a copy of its charter in the office of the Secretary of State, and cause an abstract of the same to be recorded in the office of the Register in each county in which such company desires to carry on business or own property," the first section of which, in substance, provided that where any foreign corporations had been engaged in business, made contracts, or purchased property in this State after the passage of Chs. 95 and 122 of the Acts of 1891, without first complying with these conditions, that all such contracts shall be as valid as if, at the

time, its charter had been filed with the Secretary of State and an abstract of same filed in each county where it carried on business and made contracts; provided, however, that this section should apply only to such corporations as had. already in good faith complied with the provisions of these chapters of the Acts of 1891, as well as those of Ch. 31 of the Acts of ₆1877; and provided further, that no mortgage or trust deed executed to secure indebtedness to a foreign corporation upon real estate in this State, at a time when it had not complied with the laws of this State, shall be foreclosed until two years after the passage of this Act. This Act was approved by the Governor on the tenth of May, 1895. There is no doubt of the purpose of the Legislature in its passage.

The case of *Cary-Lombard Lumber Co.* v. *Thomas,* 8 Pickle, 593, had called public attention to the fact that a great many foreign corporations, in ignorance of the requirements of the Act of 1891, had been carrying on a large volume of business in this State, out of which many and important contracts had grown, and were still *in fieri*, and which were put in serious peril as the result of that opinion. To relieve this condition, and to effectuate contracts which both parties supposed to be valid at the time they were made, this legislation was enacted.

This record showing that the defendant corporation had complied with the provisions of Ch. 31 of the Acts of 1877, and also with those of Chs. 95

and 122 of the Acts of 1891, at the date of the
passage of Ch. 119 of the Acts of 1895, it is in-
sisted that its mortgage was validated by that Act,
and that the Court of Chancery Appeals was in error
in holding otherwise.    The effect of a curative Act,
such as this is, was considered by this Court in
*Shields* v. *Clifton Hill Land Co.*, 10 Pickle, 123.
The facts in that case were that certain parties had
prepared a charter for a land company under the
general incorporation Act of 1875. · The incorpora-
tors signed this charter, and in all other respects
complied with the provisions of that Act save that
it was acknowledged by them before a Notary Public.
Such an acknowledgment rendered the charter invalid,
as was held by this Court in *Brewer* v. *State*, 7 Lea,
682.    While in this condition, and assuming that the
corporation was legally organized, a very large pur-
chase of real estate was made in its name.    Sub-
sequently, default being made in the payment of the
purchase money, the vendors sought to hold the in-
dividual corporators liable, upon the ground that the
legal result of the invalidity of their charter was
that they were personally liable for the amount still
due on the land.    The defendants, in pleading and
argument, conceded the defective nature of their char-
ter, but claimed that it was effectually cured by the
Act of March 10, 1890.    The complainants, how-
ever, insisted that this Act was passed after their
right to hold defendants as individuals had accrued,
and that this right was protected by the clause of

our Constitution which prohibits "a retrospective law, or law impairing the obligation of contracts." This Court, in that case, said this provision "does not mean that absolutely no retrospective law shall be made, but only that no retrospective law which impairs the obligation of contracts, or divests or impairs vested rights, shall be made." And the conclusion then reached by us, after a full citation of and discussion of the authorities, was that the curative Act of 1890 effectuated, rather than impaired, the obligation of the contract, and interfered with no vested right of the complainants. Among the cases referred to in that opinion as authority for it, was *Gross* v. *U. S. Mortgage Co.*, 108 U. S., 488. That case, like the one at bar, involved the question as to the effect of a curative Act upon loans by foreign corporations to and mortgages given by citizens of the State of Illinois for their security, prior to the date of the Act there in question. It was insisted, in argument at the bar, that the curative statute was unconstitutional and void. But that Court, speaking through Justice Harlan, said: "That the Act in question is not repugnant to the Constitution, as impairing the obligation of a contract, is, in view of the settled doctrines of this Court, entirely clear. Its original invalidity was placed by the Court below upon the ground that the statutes and public policy of Illinois forbade a foreign corporation from taking a mortgage upon real property in that State to secure a loan of money.

Whether that inhibition should be withdrawn was, so far at least as the immediate parties to the contract were concerned, a question of policy rather than of constitutional power. When the legislative department removed the inhibition imposed, as well by statute as by the public policy of the State, upon the execution of a contract like this, it cannot be said that such legislation, although retrospective in its operation, impaired the obligation of the contract. It rather enables the parties to enforce the contract they intended to make. It is, in effect, a legislative declaration that the mortgagor shall not, in a suit to enforce the lien given by the mortgage, shield himself behind any statutory prohibition or public policy which prevented the mortgagee, at the date of the mortgage, from taking the title which was intended to be passed as security for the mortgage debts."

We think this conclusion rests on sound reason as well as abundant authority, and that the Court of Chancery Appeals was in error in declining to give the cross complainant the benefit of the curative Act of 1895. But it is contended by complainant, Butler, that whatever may be the effect of this statute as between the mortgagor and the mortgagee, it cannot affect his superior right to enforce his vendor's lien, which was fixed, by the filing of the bill in this cause, at a date prior to its passage. This contention, however, cannot be maintained by him, in view of the finding of the Court

of Chancery Appeals that the recital of the pay-
ment of consideration was made in his deed "in
order to enable the said Sallie J. D'Armond to
hold a clear title to said property, that she might
obtain a loan to be secured by a mortgage thereon,
and, that after the execution of such mortgage, com-
plainant, Butler, was to have a lien on said lot,
second only to said mortgage, to secure his unpaid
purchase money." Even if complainant could at all
invoke the doctrine of vested rights, he is in no
condition, on this record, to complain of this legis-
lation as retrospective within the constitutional pro-
hibition, when its effect is to place him in the exact
position which he contracted for at the time of the
execution and delivery of his deed.

But complainant, Butler, also insists that the de-
fendant corporation is not entitled to the benefit of
this curative Act, because it was passed after the entry
of the decree of the Chancellor, which conclusively,
as it is assumed, settled the rights of these respective
parties. This contention is equally unsound. The
decree in question was pronounced in the early part
of December, 1894, and, in a few days thereafter,
was brought by the appeal of the corporation to
this Court, and the cause was pending here at the
time this Act became operative. The effect of this
appeal was to devitalize this decree and to place
the cause in this Court as if no decree had ever
been pronounced. Gibson's Suits in Chancery.

The result is, that so much of the decree of the

Court of Chancery Appeals as invalidated this mortgage is reversed, and a decree will be entered here subordinating the lien of complainant to it. So much of that decree as remands the cause to the Chancery Court for a sale under complainant Butler's bill, is affirmed. Out of the proceeds of sale the costs of this cause will be paid, and then a sufficiency thereof will be appropriated to the satisfaction of the mortgage debt, and the balance, if any, as far as may be necessary to complainant's claim.