# BARNER et al. v. BOGGIANO.—222 S. W. (2d) 672.

Western Section. December 17, 1948.

Rehearing denied December 31, 1948.

Petition for Certiorari denied by Supreme Court, March 11, 1949.

Taylor & Taylor, and Robert E. Joyner, of Memphis, for appellants.

C. A. Davis and F. C. Sewell, both of Memphis, for appellee.

ANDERSON, P. J. By the bill in this case the complainants seek an injunction against defendant from engaging in the candy business in the city of Memphis, in violation of the terms of an alleged contract with the complainants, and for damages for the breach of said contract. The complainants also seek to recover damages on the ground that the defendant enticed persons to leave the complainants' employment.

The Chancellor dismissed the bill, and the complainants appealed.

In July 1946, and prior thereto, the defendant operated a candy manufacturing business known as the Independent Candy Company. The complainants who were partners learned that the defendant wanted to sell the business, and approached him about the matter. Negotiations were entered into with the result that the defendant agreed to sell the business for the value of the stock on hand and $10,000. The complainants accepted this proposition and put up $1,000 as earnest money, with the understanding that the transaction would be consummated following an inventory. About July 24, 1946, the complainant Barner went to the defendant's place of business and closed the deal with him, paying the balance of the purchase price which had been agreed upon. The defendant's bookkeeper drew up a bill of

sale, which was signed by the defendant and delivered to Barner. There were some articles in the store which were not included in the transaction. Of these Boggiano made a list, which was signed by the complainant Barner for the purpose of showing that they were not included in the sale. Thereafter the complainants operated the business, retaining in their employ the employees who had formerly worked for the defendant.

In November, 1947, the defendant opened another candy manufacturing business in Memphis, and some time thereafter the parties who had formerly been employed by the complainants were employed by the defendant in the new business. The complainants contend that by reason of having lost these skilled employees they were compelled to close down their business for a period of three weeks while new employees were procured and trained to do the special type of work required.

At the time the case was tried, the defendant had sold the new business which he opened up following the sale of the Independent Candy Company to the complainants. As said, one object of this suit was to enjoin the defendants from operating a competing candy business in Memphis in further violation of an alleged agreement not to do so and to recover damages sustained by the complainants by reason of said alleged prior violation. The determinative question upon this aspect of the case was whether there was a valid agreement on the part of the defendant not to re-engage in a candy business. It is conceded that the written bill of sale executed by the defendant and delivered by the complainants makes no mention of any such agreement; but the complainants contend that there was a contemporaneous parol agree-

ment to that effect. This, the defendant denies. The case was tried on oral testimony pursuant to a written stipulation and the bill of exceptions preserved the evidence in narrative form.

The Chancellor held that the bill of sale executed by the defendant "is presumed to contain the entire agreement of the parties to said sale and that the complainants' proof fails to overcome this presumption, which presumption is supported by the defendant and his witnessess", and that "under the above mentioned holding and finding of the court it is not necessary, and the court does not make a finding of fact with reference to whether or not the defendant agreed or did not agree to go into the candy business. . . ." The Chancellor further found as follows:

"The complainants' proof failed to show that the alleged agreement not to go back into business made by the defendant, Albert Boggiano, was an independent and collateral agreement to the written instrument abovementioned and executed at the time said sale was closed, as the complainants, King and Barner, discussed between themselves whether or not said alleged agreement should be reduced to writing and concluded that it was not necessary, taking into consideration the fact that the defendant was trying to back out of said sale and at most, if it existed at all, was merely a part of the negotiation of said sale;

"The complainants knew in advance of the defendant going back into business, of his plans and preparations concerning the same, and tried to purchase the new business but failed and that they did not mention the alleged agreement that the defendant was not to again enter the candy business at the time they attempted to purchase said business;"

■ We think the complainants failed to show by a preponderance of the evidence that there was a valid agreement on the part of the defendant not to re-engage in the candy business. The complainant King testified that in the course of the negotiations with the defendant, the complainant Barner asked him "if he would sign an agreement not to go back into the candy business during his lifetime", and that Mr. Boggiano said, "Hell, yes, I'm through with the candy business forever."

· He also testified that he and his partner, the complainant, Barner, knew for several months in advance that the defendant was making preparations to go back into the candy business during which time he attempted to buy him out "but did not mention anything at all about his agreement not to go back into business"; and that he and Barner discussed "whether or not the agreement with the defendant not to go back into the candy business should be reduced to writing prior to the time said transaction was closed, and decided it was not necessary, as Mr. Boggiano was trying to back out of the deal any way and his word was as good as his bond."

Barner corroborated King as to what was said by the defendant about not going back into business, and testified further that King told him that Boggiano's word was good and that "he should not push him too hard because he might back out of the deal". He also testified that the agreement on the part of the defendant not to go back into the candy business was never mentioned thereafter and that "the reason the bill of sale and list of property which did not go were reduced to writing was so there would be no question about the transaction."

It will be observed that the testimony of both complainants is not that the defendant agreed not to go

back into the candy business, but that he would sign an agreement to that effect. The undisputed evidence is to the effect that the defendant never did "sign" such an agreement, nor was he ever requested to do so, by either of the complainants, notwithstanding that a written bill of sale was executed.

One Aldridge, an employee of the defendant, was present at the time the negotiations were being carried on. He testified he did not hear all that was said, but that he did hear the defendant say "he was not going back into the candy business any more."

As already said, the defendant denied making any agreement not to go back into business and testified that the "bill of sale contained the full agreement between the parties and was reduced to writing for the sole purpose of eliminating any question about said sale; that Mr. Barner stated that when said sale was closed the only thing he was interested in was his (Boggiano's) sugar allotment; that sugar was rationed at the time and remained rationed for over a year after said transaction was closed."

If it be assumed that the evidence offered in behalf of the complainants was sufficient to show that the defendant agreed not to go back into the candy business, this was not a valid agreement because it was without limitation with respect to time or place. Turner v. Abbott, 116 Tenn. 718, 94 S. W. 64, 6 L. R. A., N. S., 892, 8 Ann. Cas. 150; Matthews v. Barnes, 155 Tenn. 110, 293 S. W. 993, 52 A. L. R. 1350.

After the proof was closed and the opening argument on behalf of the complainants had been completed, the defendant's counsel directed the attention of the court to the fact that the agreement proven was void

as against public policy. Thereupon the solicitor for the complainants asked permission of the court to put the complainant King back on the witness stand "to ascertain just what he had testified to with reference to said agreement." The application was granted and complainant King having resumed the stand, testified that "he was under the impression that he had stated that the defendant, Albert Boggiano, had agreed not to go back in the candy business during his life in the City of Memphis". None of the other witnesses were recalled to the stand. King's testimony did not remedy the defect in the agreement. It will be observed that he did not attempt to correct his testimony with respect to what the agreement actually was, but testified only as to his "impression" as to what he had testified before. The bill of exceptions reflects that this "impression" was erroneous. There is no reference in King's prior testimony about the agreement being limited to the City of Memphis. So, according to the undisputed testimony, viewed in the aspect most favorable to the complainants, the agreement, if it can be regarded as proven, being without limitation, was invalid and unenforcible. Authorities supra.

Complainants contend that the Chancellor erred in not awarding a recovery for damages by reason of the defendant having enticed four persons from the complainants' employ. These persons were Manas, Dennis Buford, Ollie Smith and Willie May Perry, all of whom were employees of the defendant at the time he sold the business to the complainants. All of them testified as witnesses for the defendant. We think there is no substantial evidence in the record that the defendant induced these persons to break a contract of employment

with the complainants. As reflected by the bill of exceptions, the only evidence offered by the complainant on this aspect of the case is found in the testimony of the complainant King. This is as follows: "That when he learned the employees were quitting to go to work for Mr. Boggiano, he went down to see Mr. Boggiano and was told by him that he would not hire any of the employees; that later on he tried to call Mr. Boggiano on the telephone and Mr. Boggiano would not talk to him about the matter; that one of the employees, Ollie Smith, who was a candy wrapper, told him that she was quitting but that she would stay on and help train another employee and that he told her since his candy makers had quit, there would be no candy to wrap and he would not need her."

This testimony does not make out a case. Two of the employees testified that they quit the complainants' employ because they were dissatisfied with the conditions under which they worked. They also testified that they did not enter the employ of the defendant until three weeks after they quit that of the complainants. The remaining two employees testified that they did not quit but were discharged by the complainants and thereafter were employed by the defendant in the new business.

The law on the subject is found in Code Section 8559, which provides that: "It shall be unlawful for any person, knowingly, to hire, contract with, decoy or entice away, directly or indirectly, any one, who is at the time under contract or in the employ of another; and any person so under contract or employ of another, leaving his employ without good and sufficient cause, before the expiration of the time for which he was employed, shall forfeit to the employer all sums due for service already

rendered, and be liable for such other damages the employer may reasonably sustain by such violation of contract.''

We have stated all the material evidence on the subject and as already indicated, think it insufficient to make out a case under the statute. But the complainants say that since the Chancellor found that the defendant ''enticed said employees to leave the employment of the complainants and the defendant did not appeal from the decree, that he is precluded from challenging that finding.'' This is an erroneous conception of the practice. The case having been tried on oral testimony pursuant to a written stipulation to so try it, it was tried according to the forms of the chancery court. The appeal by the complainants from the decree dismissing the bill was a broad appeal, which had the effect of abrogating the decree of the Chancellor and transferring jurisdiction of the entire cause to this court. The trial here is de novo, with a presumption of correctness attending the decree by virtue of Code Section 10622. Where this is true, the case is triable just as if it originated in this court, save for the presumption arising by virtue of this Code section. Butler v. United States Savings & Loan Co., 97 Tenn. 679, 37 S. W. 385; Lacy v. Rymer, 28 Tenn. App. 180, 187 S. W. (2d) 653; Collier v. Memphis, 160 Tenn. 500, 26 S. W. (2d) 152; Maskall v. Maskall, 35 Tenn. 208. In other words, the burden was on the complainants in this court to make out every essential element of the cause of action, just as it was in the chancery court. This, for the reasons stated, we think the complainants have failed to do. It is well settled that if there is any ground upon which a decree before the appellate court on a broad appeal can be affirmed, it will

be done, even though it be a different ground from that upon which the Chancellor bases his decree. Oppenheimer v. Farmers' & Merchants' Bank, 97 Tenn. 19, 23, 36 S. W. 705, 33 L. R. A. 767, 56 Am. St. Rep. 778.

The result is, the decree is affirmed at the cost of the complainants.

### On Petition To Rehear.

The petition to rehear is grounded on Rule 11, Section 4, of this Court, which is in the following language: "No assignment of error in any case brought to this court for review can be predicated upon any alleged error of the trial court consisting of an omission or affirmative action in the organization of the court or jury, or for any defect in the pleadings, or for any mistake, irregularity or error in the conduct of the case, unless it affirmatively appears in the record that the omission, action, defect, or error was reasonably called to the attention of the trial judge and ruled on adversely to the party complaining, otherwise same will be treated as having been waived, or cured in the trial court."

There are several reasons why this rule has no application to this case. We are not dealing with an assignment of error. The defendant assigned no errors. The Chancellor decided the entire case in his favor, holding that the complainants were entitled to no relief and dismissing the bill. The complainants were granted a broad appeal. The defendant was satisfied with the Chancellor's action. The case was triable de novo in this court, with a prima facie presumption that the decree was correct.

The ultimate question for decision here was whether the action of the Chancellor in dismissing the bill was

erroneous. The burden was on the complainants to show that it was and that upon the evidence in the record they were entitled to the relief sought.

 ██ The case was tried according to the forms of the chancery court. A motion for a new trial was not a prerequisite to a review by this court of questions of fact arising upon the record. The applicable rule, as stated by Judge Williams in his annotations of Code Section 9036, is as follows: "The broad appeal in a matter of equity tried according to the forms of the chancery court, whether from the circuit or chancery court, opens the whole case for hearing before the appellate court, and gives a trial de novo, upon the pleadings and evidence, regardless of the decree below, that is, in the same manner as it was triable before the inferior court."

Many cases are cited to support this statement of the rule. So far as we know, it has never been questioned. The only change was brought about by Code Section 10622, which does no more than to provide a prima facie presumption of correctness with respect to the Chancellor's decree. McCalla v. Rogers, 173 Tenn. 239, 116 S. W. (2d) 1022.

 ██ We held, among other things, that there was no evidence in the record to justify us in granting relief to the complainants on the theory that the defendant had enticed away the complainants' employees. The fact that the Chancellor also denied this relief, but upon another ground which we did not reach, is immaterial in a case of this kind. The case of Oppenheimer v. Farmers' & Merchants' Bank, 97 Tenn. 19, 23, 36 S. W. 705, 33 L. R. A. 767, 56 Am. St. Rep. 778, cited in the original opinion, which counsel doubtless overlooked, expressly so holds. See also Chambers v. Chambers, 92

Tenn. 707, 23 S. W. 67; Sheafer v. Mitchell, 109 Tenn. 181, 71 S. W. 86; Hobson v. Hobson, 184 Tenn. 484, 201 S. W. (2d) 659; Chicago Bldg. & Mfg. Co. v. Barry, Tenn. Ch. App., 52 S. W. 451; Cannon v. Hickman, 4 Tenn. App. 588, and Cf. Barretsville Bank & Trust Co. v. Balton, 182 Tenn. 364, 377, 187 S. W. (2d) 306. Even in a case tried according to the forms of law where the trial is before the judge without a jury, a correct judgment will be affirmed if sufficient reasons for the conclusion reached appear in the record, notwithstanding that the trial judge may have given insufficient grounds for his decision. Little Rock & Memphis R. Co. v. Wilson, 90 Tenn. 271, 16 S. W. 613, 13 L. R. A. 364, 25 Am. St. Rep. 693; Alabama G. S. R. Co. v. McDonough, 97 Tenn. 255, 37 S. W. 15; East Tennessee, V. & G. R. Co. v. Mahoney, 89 Tenn. 311, 312, 15 S. W. 652; Weinstein v. Barrasso, 139 Tenn. 593, 202 S. W. 920, L. R. A. 1918D, 1174; Red Top Cab Co. v. Rosenblum, 3 Tenn. App. 454; Ankenbauer v. Ankenbauer, 6 Tenn. App. 221.

However, it is insisted that the defendant did not except to the finding of the Chancellor which was adverse to him. This contention is also based upon a misconception of the practice. It overlooks the distinction between cases tried according to the forms of law and those tried according to the forms of equity. Carter v. Pickwick Greyhound Lines, 166 Tenn. 200, 207, 60 S. W. (2d) 421; Sartain v. Dixie Coal & Iron Co., 150 Tenn. 633, 655, 266 S. W. 313.

Finally, it may be observed that if Rule 11, Section 4, were applicable to the situation before us, the complainants themselves would be in a rather bad plight; for so far as the record discloses, they did not attempt to comply with that rule as a preliminary to assigning errors

in this court. It is likely that in the circumstances of the particular case it did not occur to them that the rule was applicable to the questions to be presented upon appeal by the assignments of error. As already indicated, we think the rule was not applicable.

The petition to rehear is denied at the cost of the complainants.