DeadebicK, J.,
delivered ■ the opinion of the Court.
The bill was filed in the Chancery Court at Brownsville, by Margaret Bennett, wife of W. K. Bennett, by her next friend, against Jas. L. Win-field, Charles 3?. Read, Charles P. Taliaferro, and W. K. Bennett, the husband of complainant Margaret.
The bill charges that all the defendants were late partners in trade, under the firm name of Winfield, Read & Co., and during their partnership they borrowed of her $2,071.04, for which they executed their note to her, due one day after date. She being at the time of the execution of said note, June 5, 1866, a single woman.
The bill further charges that two days before her intermarriage with defendant Bennett, and in contemplation of their marriage, she and the said Bennett, on the 22d of February, 1869, entered into a marriage contract, signed by both the parties, witnessed and registered, by which it was stipulated that complainant should retain the sole and exclusive use, benefit, and control of her property then in possession, real and personal,- and all that might *442 thereafter be acquired by her. Defendant Bennett relinquishing and releasing all right or interest therein by virtue of the contemplated marriage.
The note and marriage contract are exhibited with the bill, which prays that her rights to the proceeds of said note may be declared, and that she have a decree against the defendants for the amount thereof, and that the same be invested under the direction of the Chancery Court for her sole and separate use — her husband being insolvent.
The defendants, except Bennett, demurred, on the ground that the intermarriage of complainant Margaret, the payee, with Bennett, one of the payors, operated to release the said Bennett and the other defendants, as co-obligors, from all liability to pay said note.
The Chancellor overruled the demurrer, and allowed the defendants to appeal from his decree, overruling the demurrer and requiring them to answer the bill.
The stipulations of the marriage contract are in substance:
That a marriage between the contracting parties is about to take place, “and W. K. Bennett being a widower, having three children living with him, and Margaret Moore being a single woman without children, it appears right, just and proper, that whatever property, real or personal, the said Margaret now has, or may hereafter acquire, should be set apart and secured to her own sole and separate use and control after marriage, the same *443 as at tbis time;, therefore, this witnesseth that the said W. K. Bennett, for himself, his heirs, etc., agrees with the said Margaret that she may and shall at all times, and under all circumstances, keep, have and set apart for her own sole and separate use and benefit, and to be and remain absolutely at her disposal and control, all the property, real and personal of any kind whatever, which she may now have, or which may hereafter by any means become hers, and the same shall always be held by the said Margaret for her own sole and separate use and benefit, separate and independent of any right, title, claim, or interest that the said Bennett, or any one claiming under or through him, ■ might, could, would, or should have to the same, under, or by reason of the said marriage.
And now, in order that said Margaret may more fully enjoy and control said property, the said Vm. K. Bennett agrees, and by these presents doth covenant and bind himself, his heirs, assigns, executors and administrators forever, to relinquish, and does hereby forever relinquish, all right, title, claim in and to all the property, real and personal of every kind, sort, and character whatever, which the said Margaret Moore now has, or which may hereafter become hers by any means whatever.”
Such are the provisions of the marriage contract, and we are of opinion that they clearly exclude the marital rights of the husband to the wife’s property.
Personal property includes everything which is the subject of property not of a freehold nature.
*444 dioses in action are therefore included in the definition of personal property: 2 Kent, 340.
It cannot be questioned that at law if a man marries a woman to whom be is indebted, the debt is thereby extinguished.
It is equally well settled that the husband, at law, becomes the absolute owner of all the personal property in possession of the wife at the time of the marriage.
But if, before the marriage is consummated, a contract is entered into between the parties, whereby the marital rights of the husband are excluded, a very different rule prevails, and equity will enforce such contract in favor of the wife against the husband and those in privity -with him.
The marital rights of the husband may be excluded by contract before the marriage, and when a separate estate is thus created in the wife, the husband has no interest in it. The intention to create or reserve in her such separate estate must clearly appear from the instrument creating it, but no particular form of words . is necessary to this purpose: 2 Kent, 162-3.
Bor many purposes courts of equity treat the husband and wife as distinct persons, capable of contracting with each other, of suing each other, and of having separate estates, debts and interests. A wife may, in a court of equity, sue her husband, and be sued by him: 2 Sto. Eq., § 1368.
In treating of the cases in which contracts be *445 tween husband and wife will be recognized and enforced, Story says: “by the general rules of law, the contracts made between husband and wife before marriage, become by their matrimonial union utterly extinguished.
Thus, for example, if a man should give a bond to his wife, or a wife to her husband, before marriage, the contract created thereby, at law, would be discharged by the intermarriage. .
Courts of equity, although they generally follow the same doctrine, will, in special cases, in furtherance of the manifest objects and intentions of the parties, carry into effect such a contract made before marriage between husband and wife, although it would be avoided at law.
An agreement, therefore, entered into between husband and wife before marriage, for the mutual settlement of their estates, or of the estate of either upon the other, upon the marriage, even without the intervention of trustees, will be enforced in equity, although void at law:” 2 Sto. Eq., § 1370; Cord on Rights of Married Women, § 980.
“When the-husband stipulates before marriage, either that the wife shall .enjoy her own property, or that she shall be entitled to a certain benefit out of his estate, he will be bound in equity to perform his agreement, even though it was entered into with the wife herself, and became suspended, at law, by his subsequent marriage:” 2 Kent, 163, and note 13.
*446 And equity allows the wife to institute suit against ber husband to recover her separate estate: 2 Kent, 164.
In the case of Carmel v. Buckle, the wife, before marriage, gave a bond to her intended husband, in the penalty of £200, to convey all her lands to him in case the marriage took effect. The parties were married — had issue, who died without issue— the wife died, and then the husband, he having occupied the land till his death. No conveyance was made by the wife to the husband, and after his death his heir brought a bill against the heir of the wife to compel him to convey the lands to the heir of the husband.
The Lord Chancellor said: “The inaccurate manner of wording the bond is not material; for it is sufficient that the bond is a written evidence of the agreement of the parties that the feme, in consideration of marriage, agrees the man shall have the land as her portion; and this agreement being upon a valuable consideration, shall be executed in equity. It is unreasonable that the marriage, upon which alone the bond is to take effect, should itself be the destruction of the bond. The foundation of that notion is, that at law, the husband and wife being one person, the husband cannot sue the wife on this agreement; whereas in equity, it is constant experience that the husband may sue the wife or the wife the husband, and the husband might sue the wife upon this very agreement:” 2 P. Williams, 243.
*447 It is manifest that this case was determined upon the husband’s right to sue the wife upon the agreement entered into before the marriage, and not upon the idea that the marriage suspended the right of the husband to enforce the contract during coverture, as insisted by defendant’s counsel. It is true, no suit was brought during the life of the wife.
The ground of objection to the enforcement of the bond was, “that a bond given by the wife became void upon the intermarriage, because it was then suspended.” But the Lord Chancellor very clearly declared that the husband could sue the wife upon this very agreement..
Even at law a bond given by a husband to his intended wife, upon a condition not to be performed in his lifetime, would not be extinguished by the intermarriage, but only suspended during coverture; for marriage extinguishes such contracts only as are for debts, or which - are due in presentí, or in futuro upon a contingency which may occur during the coverture: 2 Sto. Eq., § 1371.
It is true, that the note exhibited with the bill was not executed in consideration of marriage, but it was a part of the personal property, owned and in the possession of the- complainant, at the time of the execution of the marriage contract, and that instrument preserved to her all the rights in and to it, after the marriage, which she had before; and we have seen that where the husband stipulates with his wife, before marriage, that she *448 shall enjoy her own property, after marriage, as she had done before, equity will compel him to perform his agreement, and no trustee is necessary in such case, to the validity of such agreement, but a court of equity will not only recognize but will enforce all the rights acquired by, or preserved to, the party under said agreement, by appropriate orders and decrees for that purpose.
The object of this marriage contract was to preserve to complainant the rights in and to her property, real and personal, including her choses in action, as they existed at the time of its execution, and such were its effects. "We therefore hold that defendant Bennett was not discharged from the obligations of .said note by the marriage, nor were his co-obligors released thereby.
It follows from the views herein indicated, that the decree of the Chancellor in overruling the demurrer of the defendant was correct, and is affirmed, and the cause will be remanded to the Chancery Court to be proceeded in according to the principles of this opinion.
The defendants who have appealed, and their surety for the appeal, will pay the costs in this Court.