Byrd *v.* Byrd.

(*Knoxville.* September 28, 1895.)

HUSBAND AND WIFE. *Deed obtained by wife's fraud set aside.*

A deed by a husband to his wife upon consideration of love and affection will be set aside for fraud where she induced him to make it by professing to be true to her marriage vows, when, at the time of its execution, she was living in secret adultery.

FROM SCOTT.

Appeal from the Chancery Court of Scott County. H. B. LINDSAY, Ch.

TEMPLETON & CATES and J. C. PARKER for Joseph Byrd.

YOUNG BROS. for Emma Byrd.

WILKES, J. This bill was filed by the husband against the wife to obtain a divorce and to cancel a deed made to her for a consideration of love and affection while the marital relation existed. The Chancellor granted the divorce, but refused to cancel and set aside the deed to the wife, and the husband has appealed to this Court.

The cause was assigned for hearing, under the Act of 1895, to the Court of Chancery Appeals, and that Court has reported the facts and reversed the decree of the Chancellor and directed the deed to be canceled, and the wife has appealed to this Court.

It appears from the finding of the Court of Chancery Appeals that the deed was drawn up and dated August 28, 1890, and purported to convey a house and lot in Helenwood, Tenn., being all the property of the husband.

The husband is an illiterate man, and can neither read nor write. He procured one of his neighbors to write the deed, and it is in the usual form, as follows: "Know all men by these presents, that I, Joseph Byrd, hath sold, and do hereby give, grant, convey, and confirm to Emma Byrd, my wife," etc. The deed was not signed until January, 1894, but was, soon after it was made, to wit, September 1, 1890, acknowledged before the County Court Clerk of Scott County in the usual manner, and admitted to registration without being signed.

In January, 1894, the husband and wife went to the Deputy Clerk, and requested him to sign complainant's name to the deed, which he did, and, also at their request, inserted the husband's name upon the Register's books as though it had been there when originally registered.

A short time prior to this, complainant and his wife had separated, and he had filed a bill for di-

vorce, on the ground of the wife's adultery with one
Phillips. This bill was dismissed upon the wife's
confession of her fault and agreement to mend her
life, and they were again united as man and wife,
and were so living when the signature was inserted
in the deed and on the Register's books. The hus-
band was an old man, and somewhat decrepid, and
the defendant was a young woman and his second
wife. Shortly after her return to her husband and
the dismissal of the first bill for divorce, the wife
prevailed upon the husband to cure the defects in
the deed in the manner stated, and the next day,
having gotten the deed into her possession, she again
left him, and returned to her adulterous life with
Phillips and others.

It is said that, while this may be all so, still
the deed was, in fact, executed and acknowledged in
1890, and took effect from that date, although the
grantor had not signed his name to the deed. It is
insisted that a deed need not be subscribed by the
grantor, and that, if his name is inserted in the body
of the deed by his authority, it will be sufficient,
and that the acknowledgment of the instrument will
cure the defect of want of signature.

It is perhaps true that an actual subscription of
the deed by the grantor is not required if the in-
strument is written by himself, and has his name in
the body of it, and it is probable that if the writ-
ing is done and the name is inserted by another by
the grantor's authority, and not by himself, it will

Byrd v. Byrd.

also be sufficient. But this is only in cases where the intention is that the name thus inserted should operate as a signature, and give vitality to the instrument as a completed transaction, and not to cases where an attorney or neighbor is employed to write the deed, and merely inserts the grantor's name as one of the parties to it, with the expectation that he shall afterwards sign it to make it complete and give it vitality. Here there was evidently a purpose to sign, but an omission to do so by oversight.

It does not appear that the deed was actually delivered to the wife until after the name was inserted, though it was registered. What the effect of this may be we need not, however, consider, as the Court of Chancery Appeals finds that, before the deed was originally executed and registered, and during the whole of their married relation, the wife was leading a life of deception and double dealing with her husband, living in secret adultery while professing to be loyal and true to her marriage vows, thus imposing upon him, and inducing him to convey to her all the property he owned in the world in consideration of a love, loyalty, and fidelity that had no existence on her part. Such a course of conduct constitutes the grossest and most outrageous fraud, more pernicious and reprehensible than if based on any money consideration. It would shock the conscience of mankind to allow a shameless woman to thus prostitute the most sacred of all earthly relations into a fraudulent device and

scheme to obtain the money of a confiding husband, and if the Courts, as insisted by counsel, cannot relieve from this class of fraud as fully and completely as that based on dollars and cents, they are indeed impotent in their power to remedy and obviate fraud.

The Chancellor was in error, and his decree is reversed, and the decree of the Court of Chancery Appeals is affirmed and the deed from the husband to the wife is canceled, and all right, title, interest, and estate seemingly vested in her under the deed is divested out of her and revested in the husband. The costs will be paid by the husband, and he will have judgment over against the wife for the same.