## MRS. AGNES TAYLOR v. L. P. TAYLOR, et al.

Middle Section.    December 1, 1928.

Petition for Certiorari dismissed by Supreme Court, February 9, 1929.

R. E. Dotson, of Pulaski, for appellants, L. P. Taylor, et al.
Jones & Wagstaff, of Pulaski, for appellee, Mrs. Taylor. .

CROWNOVER, J. This bill was filed by Mrs. Taylor against her husband, J. Will Taylor, and his two brothers to have set aside as fraudulent, conveyances of a 57.25 acre tract of land, being a part of an 80-acre tract, made by her husband, J. Will Taylor, to his brother, L. P. Taylor, and later conveyed by him to his brother, A. B. Taylor, and to be subrogated to the rights of the Citizens Bank and the Peoples Bank of Pulaski, the holders of a mortgage for $10,921.50 on the 57.25 acres, 180 acres and other tracts of land assigned to them by the Northwestern Mutual Life Insurance Company, which had been paid by complainant at the time she was fraudulently induced by her husband to raise a bid of $8514 on the 180-acre tract to $12,678.76 under representations that she was getting both the 180 and 57.25 acre tracts, whereas in fact he raised the bid for her on only the 180 acres, thereby releasing the lien of the mortgage on the 57.25 acres, and she thereby lost $4164.75, as said 180-acre tract was not worth more than $8514. The complainant asked for writs of attachment and injunction, and for a sale of the 57.25-acre tract.

The defendants Taylor filed a plea in abatement and · answers denying that the conveyances were fraudulent and insisted that they were made for valuable considerations, and that A. B. Taylor was an innocent purchaser for value without notice. They further insisted that the 180-acre tract was worth $12,678.76, at the time the bid was raised, and that no fraud was committed.

The Chancellor held that J. Will Taylor had fraudulently induced complainant, his wife, to raise the bid to $12,678.76, under the representations that she was getting both the 180 acres and the 57.25 acres, when in fact he had raised the bid on only the 180-acre tract with the fraudulent purpose of releasing the lien of the mortgage on the 57.25-acre tract so that his brothers would have the absolute title unincumbered. He further held that the 180-acre tract was worth only $8514 at the time, and complainant had therefore lost $4164.75, together with interest, totaling $5110.16, and was entitled to be subrogated to the rights of the banks, the holders of the Insurance Company mortgage, to this amount as against the defendants, who were not innocent purchasers, and that said conveyances were fraudulent, and as such should be set aside, and that

the 57.25 acres be sold in bar of the equity of redemption in satisfaction of the lien.

All the defendants Taylor appealed and have assigned fifteen errors, which are, in substance, that the court erred:

(1)  In holding that a married woman could sue her husband for damages for a tort.

(2)  In holding that J. Will Taylor, the husband had fraudulently induced his wife to raise the bid under representations that she was buying both the 180 and 57.25 acres, and that she should be subrogated to the rights of the mortgagee banks, and in ordering the 57.25 acres sold, as she knew that he had conveyed that tract to his brother long before the bids were raised when he was insolvent.

(3)  In holding that the conveyances to his brothers were fraudulent and should be set aside, and that A. B. Taylor was not an innocent purchaser for value without notice, as he had paid out more than $3000 as surety for J. Will Taylor.

(4)  In holding that the 180-acre tract was not worth more than $8514 as the proof showed that it was worth more than the $12,678.76 when the bid was raised.

The facts necessary to be stated are that on January 27, 1916, C. B. Adkins and wife executed to the Northwestern Mutual Life Insurance Company a deed of trust on 277.75 acres in Giles county, to secure a loan of $9000 to be paid within ten years.

This mortgage was not paid and Adkins became further involved in debts to the Citizens Bank and the Peoples Bank of Pulaski for additional sums, and on February 15, 1916 he executed a second mortgage on a 180-acre tract which was a part of the aforesaid 277.75 acres, to E. E. Eslick, trustee, to secure various notes due the banks. This mortgage was subject to the Northwestern Mutual Life Insurance Company mortgage.

On January 24, 1921, C. B. Adkins executed another mortgage on said 180 acres to E. E. Eslick and W. L. Abernathy, trustees, to secure other indebtedness to said banks. This mortgage was likewise subject to the mortgage to the Northwestern Mutual Life Insurance Company.

On October 26, 1916, C. B. Adkins conveyed to his stepson, Carol Shriver, 80 acres, which was a part of the 277.75 acres, but not a part of the aforesaid 180-acre tract, for the consideration of $4650, which was later paid, but this conveyance was made subject to the mortgage of the Northwestern Mutual Life Insurance Company. Carol Shriver and E. E. Eslick conveyed this tract to

defendant J. Will Taylor on September 24, 1919 for $8000 cash, but it was conveyed subject to the Insurance Company's mortgage.

J. Will Taylor on December 24, 1919, conveyed to Gray Ragsdale 22.75 acres, being a part of the above 80-acre tract, and on September 28, 1922, J. Will Taylor executed a deed to his brother, L. P. Taylor, conveying the remainder of said 80-acre tract, being 57.25 acres and a right of way, for the recited consideration of $2750, evidenced by notes due in 1923, 1924, 1925, 1926 and 1927. This conveyance was made subject to the Northwestern Mutual Life Insurance Company's mortgage.

On December 15, 1922, the Northwestern Mutual Life Insurance Company sold and transferred its deed of trust and notes against C. B. Adkins to the Citizens Bank and the Peoples Bank of Pulaski for $9223.36, and in the meantime Adkins had conveyed 20.27 acres of the 277.75 acres to S. A. R. Appleby, and the Northwestern Mutual Insurance Company and E. E. Eslick had released the lien of the mortgage on this tract. Adkins had also conveyed 5 acres of the 277.75 acres to Ned Coble, subject to the Insurance Company's mortgage.

Shortly thereafter, W. L. Abernathy and E. E. Eslick as trustees for said banks filed a bill against C. B. Adkins and wife, J. Will Taylor, L. P. Taylor, Ned Coble and Gray Ragsdale, to foreclose the lien of their mortgages on said tracts of land, and on July 8, 1923, the said banks obtained a decree for $10,921.50 against Adkins, which was decreed to be a lien on the different tracts of land aggregating the 277.75 acres, except the 20.27 acres conveyed to Appleby on which the lien was released, and the court appointed Eslick and Abernathy as trustees and special commissioners to sell said tracts of land, in the order named, that is, they were to sell first the 180 acres, second the 8 acres, the Hobbs tract, third the 57.25 acres, fourth the 22.75 acres, Gray Ragsdale's tract and fifth the 5 acres, Ned Coble's tract.

The commissioners advertised and sold said property on September 29, 1923 and reported the sale on October 16, 1923, which in substance was as follows:

1. 180-acre tract sold for ...................$7,740.00
2. 8-acre Hobbs tract sold for ...............    80.00
3. 57.25-acre Taylor tract sold for ..........  1,431.25
4. 22.75-acre Gray Ragsdale tract sold for ...    568.75
5. 5-acre Ned Coble tract sold for ...........    125.00

Total, ......................................$9,945.00

J. Will Taylor, who was a dealer in live stock, had married the complainant on November 30, 1922, at Cullman, Alabama. He having become interested in this property represented to his wife that if she would raise the bid ten per cent. it would be a good investment, and upon his representations she authorized him to raise the bid to $8514, thereupon he and his brother L. P. Taylor filed a petition to open and raise the bid to $8514, in which petition they joined the complainant, and the bids were reopened and the property was again auctioned on December 17, 1923. Before the bids were cried off, the defendant J. Will Taylor asked Mr. Eslick ·the amount of balance due on his mortgages and was told that there was $12,678.76 balance due, thereupon J. Will Taylor and his attorney bid the whole sum of $12,678.76 on the 180-acre tract, and the trustees then announced that the other tracts would not be sold as this covered the balance due on their mortgages, and that the other tracts would be released of the liens of the mortgages.

J. Will Taylor then represented to his wife who was not present, that he had raised the bid on the 180-acre tract and the 57.25-acre tract to $12,678.76 and she borrowed the money and gave it to him which was paid to the trustees, and a deed was executed by them conveying only the 180-acre tract to her, but Taylor withheld the deed from her and she thought ·that she had bought both tracts for this sum.

Immediately upon the raising of this bid on the 180-acre tract and the consummation of the sale of this tract to her for the full amount of the mortgage indebtedness, L. P. Taylor conveyed the 57.25-acre tract to his brother, A. B. Taylor for the recited consideration of $3000 paid.

On October 10, 1925, J. Will Taylor left the complainant and they separated, and on July 5, 1926 they were divorced, but in April, 1926, complainant ascertained for the first time through her brother that the bid had been raised only on the 180-acre tract and that she did not have the title to the 57.25 acres as represented to her by her husband, and on April 8, 1926 she filed this bill against him and his brothers.

After a careful examination of the record and the authorities we are of the opinion that there is no error in the decree of the Chancellor, and with a few slight modifications, the same should be affirmed.

We think that the first contention raised by the assignments of error is not well taken, as the wife may sue her husband in equity to set aside fraudulent conveyances and to protect her property where he has committed fraud against her. See 30 C. J., 946, sec. 664, p. 951, sec. 672; 13 R. C. L., p. 1450, sec. 500; 15 Amer. & Eng. Ency. Law, 2 Ed., 858; 11 Standard Ency. Procedure, 711; Gibson's

Suits in Chancery, secs. 83, 99, 968-969; Doherty v. Choate, 16 Lea, 192; Lancaster v. Lancaster, 13 Lea, 126; McCampbell v. McCampbell, 2 Lea, 661, 31 Am. Reps., 623; and Byrd v. Bryd, 95 Tenn., 364, 32 S. W., 198, 49 Am. St. Reps., 932; Bennett v. Winfield, 4 Heisk., 440; Cantrell v. Davidson County, 3 Tenn. Chy., 426; Brooks v. Caughran, 3 Head, 464.

Of course the principle that one spouse cannot sue the other for torts or personal wrongs (as held in Lillienkamp v. Rippetoe, 133 Tenn., 57, 179 S. W., 628; Wilson v. Barton, 153 Tenn., 250, 283 S. W., 71; 13 R. C. L., 1396, sec. 444; 30 C. J., 954), has no application to suits in equity concerning the wife's property.

The fact is established that J. Will Taylor had fraudulently induced his wife to raise the bid under the misrepresentation that she was buying both the 180 and the 57.25 acres in the transaction, and the assignments of error going to the proposition that the conveyances executed by J. Will Taylor to his brother L. P. Taylor and by L. P. Taylor to his brother A. B. Taylor were fraudulent, can have no effect on the proposition that she is entitled to be subrogated to the rights of the mortgagees on account of the misrepresentation of her husband. We think that she is entitled to be subrogated to the rights of the mortgagees, under the principles laid down in the case of Dixon v. Morgan, 154 Tenn., 389, 285 S. W., 558, to the effect that relief is generally granted upon the ground of mistake, which must be material; and so important that it determines the conduct of the mistaken party, who is not guilty of culpable negligence, or the violation of a positive legal duty. In other words, conceding that she knew that this property had been conveyed by J. Will Taylor to his brother L. P. Taylor, the mortgage was a prior lien, and where he represented to her that he had raised the bid on both tracts, and she relying upon that representation paid out her money, this certainly was a material matter, and one that determined her conduct. Hence, as we see it, if the conveyances from J. Will Taylor to L. P. Taylor and from L. P. Taylor to A. B. Taylor were not fraudulent, they were subject to the lien of the mortgage, as neither of them were innocent purchasers. It is conceded that L. P. Taylor did not pay anything of value to J. Will Taylor. While the deed from L. P. Taylor to A. B. Taylor recites that he had paid $3000 cash, nothing was paid to L. P. Taylor. The consideration was antecedent debts that had been paid as surety for J. Will Taylor. While antecedent debts may be a valuable consideration for a conveyance, yet the party who takes the conveyance is not an innocent purchaser, and for these reasons the question of whether the conveyances from Taylor to his brothers were fraudulent becomes immaterial. O'Neal v. Smith, 78 Tenn. 340, 12 Michie Tenn. Ency. Dig. 323.

However we think there is enough evidence in the record to show that L. P. Taylor and A. B. Taylor knew of the misrepresentations made by J. Will Taylor to his wife. L. P. Taylor stated in a former answer that he had paid the $2750 consideration and had the notes, whereas the truth about the matter was that he had not paid a cent. A. B. Taylor was present when the bid was raised on the 180-acre tract and just as soon as the lien of the mortgage was released on the 57.25 acres he immediately took deed from his brother reciting that he had paid him $3000, "in order to save himself." So we think it is apparent that he was present and consenting to the transaction.

One of the assignments of error goes to the proposition that the 180 acres were worth more than the $12,678.76 when the bid was raised. It is contended that there is a valuable dwelling house on this property worth from $8000 to $10,000 and that taking it and the land together it is worth $15,000 to $18,000. After a careful examination of, the record we are of the opinion that the preponderance of the evidence shows that the 180-acre tract was not worth more than $8514 at that time. Hence we think that she was entitled to a decree for the difference and that she should be subrogated to the rights of the mortgagees and that the 57.25-acre tract should be sold in satisfaction of the decree.

It results that all the assignments of error must be overruled and the decree of the Chancellor affirmed. A decree will be entered in this court for the $5110.16, with interest thereon from September 27, 1927 to the present, together with the cost of the cause, including the cost of the appeal, which is declared a lien on the 57.25 acres, and the cause will be remanded to the chancery court of Giles county for a sale of the property. The cost of the cause including the cost of the appeal is decreed against appellants and the sureties on the appeal bond.

Faw, P. J., and DeWitt, J., concur.