Mrs. Nannie Trice, *et al., v.* Newt McGill, *et al.*

(*Nashville.* December Term, 1928.)

Opinion filed February 1, 1929.

Ross & Ballew, for complainant, appellants.

Anderson & White and Galbraith & Mitchell, for defendant, appellees.

Mr. Chief Justice Green delivered the opinion of the Court.

On July 4, 1922, J. T. Trice and his wife, Nannie Trice, conveyed a farm in Chester County to the children of Newt McGill, Trice's nephew. The consideration named in the deed was $1000 and love and affection.

Trice and wife filed this bill averring that the real consideration of the deed was that Newt McGill and his wife and family should move to the Trice farm, run the farm and take care of Trice and wife so long as they lived. It was charged that McGill and his family, after moving to the Trice home and complying with this contract for about two years, moved away and breached the said contract. The bill was filed to set aside the deed and recover the land conveyed. The chancellor decreed the relief sought but the Court of Appeals reversed his decree and dismissed the bill.

(1) Conceding that the real consideration of the deed was that McGill should live on the place and take care of the old people, the deed contained no stipulation of the right to forfeit and re-enter for condition broken. If the consideration alleged had been written into the instrument, it would be treated as a covenant, in view of other language of the deed, and the complainants' remedy would have been a suit for breach of this covenant. This is true unless the deed had been taken by McGill with no intention of complying with the obligation assumed. *Carney* v. *Carney,* 138 Tenn., 647, and cases cited.

The chancellor found that McGill had no intention of complying with his undertaking to live on the farm and look after the old people when the deed was executed and, therefore, set aside the deed for fraud. The Court of Appeals reviewed the evidence *de novo* and reached a different conclusion.

(2) We think the Court of Appeals improperly undertook a review of the evidence *de novo.* The case was heard before the chancellor upon oral proof by consent but there was no agreement "expressed in writing" that the case should so be heard. *Beatty* v. *Schenck,* 127 Tenn.,

63, therefore controlled and the Court of Appeals should not have disturbed the finding of the chancellor if that finding was sustained by material evidence.

Section 4887, Thompson's-Shannon's Code, requires the appellate courts in Tennessee to review cases appealed from the chancery court "tried according to the forms of the chancery court" *de novo* and to re-examine "the whole matter of law and fact appearing in the record."

*(3)* Prior to chapter 119, Acts of 1917, a non-jury case, heard on oral testimony in the chancery court, was not tried according to the forms of the chancery court. Hence section 4887, Thompson's-Shannon's Code, was not obligatory and hence *Beatty* v. *Schenck, supra.*

Chapter 119 of the Acts of 1917, changed the forms of the chancery court so as to make it formal to try a case upon oral proof in the chancery court by consent of parties "expressed in writing." When the parties proceeded in chancery according to the provisions of chapter 119 of the Acts of 1917—under that new chancery form —the appellant was still entitled to a review of the whole matter of law and fact. *Watkins, Trustee,* v. *Sedberry,* 155 Tenn., 148.

Compliance with the new form, however, requires that the consent of parties be "expressed in writing" and there was no attempt at such compliance in this case. The case was irregularly tried and cannot be taken out of the authority of *Beatty* v. *Schenck,* which has been consistently followed.

In *Choate* v. *Sewell,* 142 Tenn., 287, the court refers to chapter 119 of the Acts of 1917 as authorizing an exception to the usual forms of the chancery court. Section 6272, Thompson's-Shannon's Code, providing that

the testimony of witnesses in a chancery case shall be taken in writing, and section 4887, Thompson's-Shannon's Code, regulating the review of cases tried according to the forms of the chancery court, are general statutes.

*(4)* It is almost a maxim in the interpretation of statutes that an exception to a general statute is strictly construed and takes no case out of the general statute which does not fall fully within the terms of the exception. Lewis' Sutherland Statutory Construction, sec. 352. Applying this rule, no case can be said to be within the terms of the exception of chapter 119 of the Acts of 1917 unless consent to a hearing upon oral proof be "expressed in writing."

*(5)* It may be added that while it is generally held in equity appeals that appellate courts may review questions of fact, in the absence of a statute requiring the contrary, the findings of the chancellor are given great weight. 2 Enc. Pl. & Pr. 402, 4 C. J. 897. Apart from section 4887, Thompson's-Shannon's Code, it is doubted if this court would have adopted a practice of reviewing questions of fact, upon appeals in equity, without regard to the finding of the Court below.

Notwithstanding the foregoing, we reach the same result attained by the Court of Appeals. An examination of the evidence does not disclose anything upon which to base a finding, in our opinion, that McGill had no intention of living up to his contract at the time it was made. We have discussed the proof orally. It is sufficient to say here that McGill went on the place, lived there two years, cultivated the farm, made permanent improvements thereupon and took care of the old people during this time. The testimony of Trice himself shows that he suggested that McGill had better leave. It seems rather

clear on the record that Trice and McGill's wife did not get along. It is not necessary to consider the merits of the controversies between the Trices and the McGills in this case. If McGill breached his contract, the Trices have thir appropriate remedy.

We see no reason why McGill should have moved to the Trice place at all, if he never had any intention of complying with his undertaking to run the farm and support the Trices. The deed to McGill's children was made and registered two months before he moved in. McGill had gotten all he ever expected to get out of the Trices before he made any move at all.

For the reasons stated, the petition for the writ of *certiorari* is denied.