McCalla *et al. v.* Rogers *et al.*

*(Jackson,* April Term, 1938.)

Opinion filed May 27, 1938.

L. E. GWINN and C. C. CASTLES, both of Memphis, for appellants.

WALTER P. ARMSTRONG, JULIAN C. WILSON, and JOHN B. SNOWDEN, II, all of Memphis, for appellees.

MR. JUSTICE COOK delivered the opinion of the Court.

The original bill was filed by the heirs of H. T. Rogers

March 16, 1931, after his death on March 4. The object of the bill was to set aside the deed of Rogers conveying to his wife, Archie Lee Rogers, a farm of 358 acres in Shelby County near the Tipton County line, the consideration for which was "love and affection." It was charged in the bill that H. T. Rogers was mentally incapable and executed the deed under undue influence. Mrs. Rogers answered the original bill before her death December 18, 1931. The litigation is now between the heirs-at-law of H. T. Rogers and of Mrs. Rogers.

An amended bill was filed February 17, 1932, attacking the deed for fraud and for failure of consideration. This charge rests upon the ground that when the deed was executed Mrs. Rogers was engaged in adulterous relationship with Clifton King and concealed her infidelity from her husband and her intention to continue the relationship with King.

The chancellor held that complainants failed to sustain the charge of the original bill that the conveyance was the result of undue influence and the mental incapacity of Rogers, but found that the latter charge was supported by a preponderance of evidence and upon that ground set aside the deed. The Court of Appeals concurred in the decree of the chancellor.

The cause was brought here upon petition for *certiorari* to review the decree of the Court of Appeals. The prayer of the petition for *certiorari* was denied, but upon petition for rehearing the writ was granted and the cause set down for argument upon two questions: First, whether the Court of Appeals erred in limiting its review of facts to an inquiry for the purpose of determining whether the evidence preponderated against the finding of the chancellor; and second, whether H. T. Rogers in his life-

time, and his heirs at law after his death, were guilty of such laches as would estop them from relying upon the charge in the amended bill that the deed is void for want of consideration because of the alleged adulterous relationship between Mrs. Rogers and King.

Referring to the first proposition: It is insisted that the review of facts by the Court of Appeals starting from a presumption that the decree of the chancellor was correct and proceeding only to the extent of determining whether the evidence preponderates against the verdict, Code, section 10622, was not a review *de novo* as required by Code, section 9036; and not being a review *de novo* affords no basis for application of the rule, Code, section 10620, that to the extent the findings of the two courts concur they shall, if there be any evidence to support them, be conclusive upon a review of the facts in the Supreme Court.

The foregoing sections of the Code are to be construed *in pari materia,* and in that connection also the legislative policy so well expressed in *Hibbett* v. *Pruitt,* 162 Tenn., 285, 36 S. W. (2d), 897, is to be considered in order to give meaning to the statutes. As indicated by the discussion in *Hibbett* v. *Pruitt, supra,* the Court of Appeals was created to relieve the Supreme Court of the investigation of questions of fact in chancery causes and give to the Supreme Court the benefit of findings by the Court of Appeals. Anything short of that purpose would defeat the very object for which the Court of Appeals was established. Code, section 10622, cannot, therefore, be construed as intended to defeat those objects, and we do not understand that it has been considered by the Court of Appeals that that section was designed to avoid a review of facts. Such a construction

of the statutes under consideration, which are mandatory (*Stiner* v. *Hardware Co.,* 168 Tenn., 99, 75 S. W. (2d), 406), would greatly impair the value and usefulness of the Court of Appeals and would result in defeating the object of the legislation. Upon a careful consideration of the statutes involved we find, and it does not seem that the Court of Appeals holds to the contrary, that it is obligatory upon the Court of Appeals in causes tried according to the forms of chancery to re-examine the law and facts as provided by Code, section 9036, and upon such review, unless the Court of Appeals finds that the evidence preponderates against the finding of the chancellor, his decree shall stand. See *Fonville* v. *Gregory,* 162 Tenn., 294, 303, 36 S. W. (2d), 900. The opinion of the Court of Appeals embraces a comprehensive review and a careful consideration of the facts and meets the requirement of the statutes according to their intent and as herein construed.

█ The chancellor and the Court of Appeals, upon review of all the evidence, found that Mrs. Moore, a widow of thirty-five, lived with her uncle, Elmer Starnes, at Memphis, and worked at Veih's bakery; that her husband, Bryan Moore, was an inmate of the Bolivar asylum. They had three daughters. The youngest was with Mrs. Moore at the home of her uncle. The others were inmates of the Masonic Home.

Clifton King, a carpenter and a married man, was a frequent companion of Mrs. Moore while she lived at the home of Mr. Starnes and King carried her back and forth in his car to work at the bakery. Their conduct indicated familiarity.

After Bryan Moore's death in 1927, Mrs. Moore was brought into contact with H. T. Rogers, either by her

uncle or by Clifton King. As to that the facts are not made clear. It is shown that Mrs. Moore's uncle, Starnes, asked a banker about Rogers' financial condition a short while after Mrs. Moore became a widow. December 15, forty-three days after Bryan Moore's death, his widow married H. T. Rogers, who was sixty-five years old, a bachelor, living alone on his farm in a somewhat dilapidated three-room log house. It was in a remote section near the Tipton County line. Some of the witnesses described Rogers as uncouth; others as unattractive, and careless in his dress. The evidence taken altogether represents him as an ordinary sixty-five year old bachelor living alone in a rural environment and surrounded by negro tenants on his farm.

On March 24, 1928, after the marriage December 15, 1927, Rogers conveyed the farm to his wife, reserving a life estate. The concurrent finding may be further summed up as follows:

An adulterous relationship existed between Mrs. Moore and King before Mrs. Moore married Rogers, and continued until the deed was executed and afterwards. Soon after the deed was executed Mrs. Rogers brought King to the home as a carpenter to repair the house and after finishing it he remained in the home as a farm laborer and was treated as a member of the family. Rogers did not discover his wife's relationship with King until about a year before his death and then, because of hardening of the arteries and other physical ailments, Rogers was physically and mentally weak and labored under fear of Mrs. Rogers and of King to such extent as prevented him from taking action to have the deed set aside.

Although King had a wife at Memphis, he lived at the Rogers' home during Rogers' life and remained after

his death until December 18, 1931, when King killed Mrs. Rogers and committed suicide. Rogers made the deed under the belief that Mrs. Rogers was a faithful wife and would continue to be so.

In response to the issue of whether the complainants are estopped by laches for failure to make a timely charge of infidelity as their ground of attack on the deed, it was concurrently found that there was a secret adulterous relationship existing between King and Mrs. Rogers before her marriage to Rogers, at the time the deed was executed, and thereafter, and that Mrs. Rogers' conduct and all the attendant circumstances evidenced an intention on her part to continue the relationship with King contrary to her marital promise to Rogers, and that she did so even until his death. It was further concurrently found that Rogers had no knowledge when the deed was executed that his wife was unfaithful and did not discover the fact until his mind was in such condition as brought him under duress and fear of Mrs. Rogers and King; and that the complainants did not have sufficient information of Rogers' relationship with King to justify a charge of infidelity until the bill was filed. Therefore, the courts held that laches could not be imputed to them.

Upon a careful review of the evidence, we find facts and circumstances sufficient to support the concurrent findings of the chancellor and the Court of Appeals. Upon such facts the deed cannot stand for want of consideration. *Byrd* v. *Byrd,* 95 Tenn., 364, 32 S. W., 198, 49 Am. St. Rep., 932; 29 A. L. R., 210, note c.

Affirmed.

DeHaven, J., took no part in the consideration and determination of the case.