COLE v. WALKER et al.—158 S. W. (2d), 57.

Middle Section. August 2, 1941.

Rehearing denied September 16, 1941.

Petition for Certiorari denied by Supreme Court, January 17, 1942.

Worth Bryant, of Cookeville, for appellants.

F. E. Harris and W. L. Cooper, both of·Cookeville, and L. S. Pope, of Nashville, for appellee.

HOWELL, J.   The bill in this cause was filed by the complainant Everett Cole against the defendants, J. H. Walker and J. E. Walker, a partnership doing business as the Monterey Hardwood Flooring Company, seeking a judgment for damages for the breach of a contract to purchase lumber.   The defendants answering denied that they had any such contract as was alleged in the bill and claimed that they did not owe complainant any amount whatever, as all matters between them had been settled except the sum of $63 which was tendered with the answer.

A jury was demanded and when the case was called for trial on December 16, 1940, the following stipulation, signed by counsel, was filed:

'' It is agreed that this cause be tried by the Chancellor sitting as a jury upon oral testimony, under the Acts of 1917, the presence of an actual jury being waived.''

The bill of exceptions contains the following language:

"This cause was tried before Hon. J. H. Wallace, Chancellor, sitting by designation in the place and stead of A. F. Officer, Chancellor, by agreement signed by counsel and filed in the record that the case be tried by the Chancellor sitting as a jury, upon oral and documentary evidence, the presence of the actual jury being waived, when, on December 16, 1940, the complainant introduced the following proof, to wit:"

Upon the conclusion of the proof and argument of counsel, the complainant moved the Court for a written finding of facts which motion was granted by the Court and a finding of facts was filed, and a decree entered in the cause giving complainant a judgment against the defendants for $1,038 and costs of the cause and ordering the $63 paid in with the answer turned over to the complainant. The defendants then made motions for a new trial and for an arrest of judgment which were overruled, whereupon they prayed and were granted an appeal to this Court which was perfected, and assignments of error have been filed.

There are seven assignments of error raising mainly questions of fact, and we are presented in this cause with a situation very similar to the appearing in the case of Phifer v. Mutual Benefit Health and Accident Association, reported in 24 Tenn. App., 600, 148 S. W. (2d), 17, 20, and in that case the Court said:

"An interesting question of practice must be disposed of in limine for the reason that the conclusion at which we arrived respecting this point will have vital relation to practically all the questions submitted in the brief of counsel for defendant. That question is whether this Court as a reviewing and revising tribunal shall treat the decree of the Chancellor with respect to the facts as the findings of a jury, or whether the pronouncement of a judge hearing the cause on oral testimony. For if the first of the alternative propositions be accepted as our guide, we are relieved of the obligation of rendering any specific findings as to the facts. If the latter rule prevails, we must then weigh the evidence and determine on which side the preponderance of the evidence lies.

"This question of practice arose some year or two ago in the case of Ragland-Potter & Co. v. Brierhill Collieries, and was ably discussed from every angle by Judge Felts in an unpublished opinion. In that decision the learned Judge construed Section 10622 of the Code in which is embraced the provision allowing appellate courts in Tennessee to re-examine an appealed case when there is an assignment that the evidence preponderates against the judgment of the judge trying the cause. Judge Felts likewise analyzed the published opinions bearing upon the subject particularly —Toomey v. Atyoe, 95 Tenn., 373, 32 S. W., 254; Beaty v. Schenck, 127 Tenn., 63, 152 S. W., 1033; Choate v. Sewell, 142 Tenn., 487, 221 S. W., 190; Pearson v. Mutual

Life Insurance Co. of New York, 17 Tenn. App., 503, 68 S. W. (2d), 963.

"An endeavor was made by the authors of the last edition of Gibson's Suits in Chancery, to make plain the distinction between cases wherein a demand for a jury had been withdrawn and those wherein there was a stipulation that the Chancellor heard the case sitting as a jury. In section 548e, subsection 2, the following language will be found. We repeat the full statement, in substance, which is, that if a party demands a jury and withdraws that demand with the consent of his adversary, the hearing will not be as if by jury; that whenever there has been a demand for a jury the cause is converted into a jury case and that the waiver of trial by jury followed by an agreement to submit the issues to the Chancellor without more will suffice to restore the case to a non-jury docket; but if such withdrawal term or equivalent term be not used, or if it be agreed that the Chancellor shall sit as a jury, then a motion for a new trial is necessary as in jury cases.

"Our conclusion is that we are constrained to treat the decree of the Chancellor as the pronouncement of the jury upon all disputed questions of fact, and that with respect to any controverted matter we shall be controlled by our ascertainment of the inquiry as to whether these findings of fact are supported by material evidence."

Section 10622 of the Code provides:

"In all cases taken by appeal or otherwise to the court of appeals from any lower court, the hearing in said appellate court shall be de novo, upon the record from the court below when the hearing in the lower court was without a jury, but there shall always be a presumption in the appellate court . . . unless the evidence preponderates against the judgment or decree. The transcript before the court of appeals in cases tried in any lower court upon oral testimony must contain a motion for new trial and bill of exceptions. (1929, Ch. 94, sec. 1, Modified.)"

This section does not apply to jury cases at law or in chancery. It applies only where "the hearing in the lower court was without a jury." It prescribes the mode of review of non-jury cases at law and non-jury cases in equity which were tried irregularly or not according to the forms of chancery. Fonville v. Gregory, 162 Tenn., 294, 36 S. W. (2d), 900. Equity causes tried according to the forms of chancery are reviewed on appeal in the mode prescribed by Code, section 9036—that is, de novo upon a reexamination of the whole matter of law and fact appearing in the record. As to the difference in the two modes of review, see Trice v. McGill, 158 Tenn., 394, 13 S. W. (2d), 49; Butler v. Eureka Security Fire & Marine Ins. Co., 21 Tenn. App., 97, 98, 105 S. W. (2d), 523; McCalla v. Rogers, 173 Tenn., 239, 116 S. W. (2d), 1022. Before 1917 the form of chancery was a hearing before a chancellor upon despositions in all cases except jury trials, divorce cases, and cases involving less than $500. Shannon's Code,

section 6272 (1932 Code, section 10562). And cases not within these excepted classes heard upon oral evidence were tried irregularly or not according to the forms of chancery. Toomey v. Atyoe, 95 Tenn., 373. 32 S. W., 254; Beatty v. Schenck, 127 Tenn., 63, 152 S. W., 1033. Chapter 119, Acts 1917 (Code, section 10564), added a new form of chancery, which was a hearing before the chancellor upon oral evidence, where the parties agreed to such oral hearing and their agreement was ''expressed in writing and filed in the cause.'' Cases so heard were tried according to the forms of chancery. Watkins, Trustee, v. Sedberry, 155 Tenn., 148, 290 S. W. 970; Hibbett v. Pruitt, 162 Tenn., 285, 36 S. W. (2d), 897; Fonville v. Gregory, 162 Tenn., 294, 36 S. W. (2d), 900; Broch v. Broch, 164 Tenn., 219, 47 S. W. (2d), 84. But cases heard by the chancellor upon oral evidence, where the parties agreed to such hearing but failed to put their agreement in writing and file it, were tried irregularly. Choate v. Sewell, 142 Tenn., 487, 221 S. W., 190; Trice v. McGill, 158 Tenn., 394, 13 S. W. (2d), 49; Boshears v. Foster, 154 Tenn., 494, 290 S. W., 387; Broch v. Broch, supra. Chapter 106, Acts of 1935 (Michie's 1936 Code, section 10564) added another form of chancery by providing the chancellor might order an oral hearing when in his judgment justice and expedition justified such order.

In the present case the written agreement filed provided that the case be tried by the Chancellor sitting as a jury upon oral testimony under the Acts of 1917, the presence of the actual jury being waived.

■ Considering this agreement as a whole, we think it does more than simply agree for an oral hearing under the Acts of 1917 as insisted by counsel for the defendant. The effect of the agreement is to waive the actual presence of the jury and try the case before the Chancellor sitting as Court and jury.

■ If the parties had merely agreed to waive the jury and have an oral hearing before the chancellor, the case would have been a nonjury case tried irregularly and would have been reviewable in the mode provided in Code, section 10622; Broch v. Broch, supra. But they went further and agreed the chancellor might find the facts as a jury. They had a right to a jury trial, which would have been reviewed as a jury case at law. Code, section 9037. They intended not to waive this right but merely to substitute the chancellor's finding for the verdict of the jury. Is there any reason why their agreement to do this should not be given effect? We can perceive none. We think some of the cases afford authority for the view that the chancellor's finding should be treated, like the parties agreed it should be, as a verdict of the jury.

In Toomey v. Atyoe, supra, there was an agreement by the parties, like that in the present case, to waive the actual presence of the jury and submit the issues of fact to the chancellor as a jury; and it was held that his finding had the effect of a verdict of the jury, and the case was reviewable as a jury case. It is true the Court rested

its decision not upon the effect of the agreement of the parties but upon the fact that the case had been tried irregularly. Beatty v. Schenck, supra, was tried irregularly, the parties having agreed merely to waive the jury and have an oral hearing before the chancellor. But the Court did say: "In cases in chancery, where a jury is demanded, and subsequently waived by the parties, with an agreement that the chancellor shall sit as a jury, his findings are always given the force of a jury's verdict. Toomey v. Atyoe, 95 Tenn., 373, 32 S. W., 254." (127 Tenn., 65, 152 S. W., 1033.)

In Choate v. Sewell, supra [142 Tenn., 487, 221 S. W., 191], there was an agreement of the parties "to waive the actual presence of a jury and submit the case to the chancellor." It was held the chancellor's finding had the effect of a verdict of a jury, and this holding was rested, not upon the fact that the case had been tried irregularly, but upon the proposition that by the agreement of the parties the case remained a jury case. The Court said:

"However, we are further of opinion that neither the act of 1917 nor the case of Beatty v. Schenck, supra, controls this case. This is a jury case, and there were actual trials before juries before the last trial. At the last trial the parties agreed to waive the actual presence of a jury and submit the case to the chancellor. The case was still a jury case, and the finding of fact by the chancellor has the same weight as the verdict of a jury. The parties agreed to waive the jury, when entitled to one, and submit the facts to the chancellor. Toomey v. Atyoe, 95 Tenn. [373], 377-379, 32 S. W., 254."

And we think there is nothing contrary to this view in any later case. The court in Fonville v. Gregory, supra, did say that cases like Toomey v. Atyoe; Beatty v. Schenck, and the like, were reviewed as non-jury cases at law. But we do not understand this to be inconsistent with the statement above quoted from the Choate case to the effect that it was a "jury case," since the mode of review in both jury and non-jury law cases then was the same, "the material evidence rule being applied." Broch v. Broch, 164 Tenn., 219, 225, 47 S. W. (2d), 84, 85. Nor do we find anything in any decision or in Code section 10622 which would prevent the present case from being treated and reviewed as a jury case, as the parties agreed that it should be, and as we think Choate v. Sewell, supra, held they could do.

Pearson v. Mutual Life Insurance Co. of New York, 17 Tenn. App., 503, 68 S. W. (2d), 963, was heard on oral evidence by the chancellor, the jury being waived, but there was no written agreement for an oral hearing under Chapter 119, Acts 1917. It held that the finding of the chancellor was binding as a verdict of a jury, the material evidence rule being applied. While it does not appear that the parties had made an agreement like that in the present case, that the issues of fact should be tried by the chancellor as a jury, it is inferable that there was such an agreement, because otherwise the chancellor's find-

ing would have been reviewable de novo according to section 10622. Fonville v. Gregory, supra.

For these reasons we think the chancellor's finding in the instant case has the effect of a verdict of a ·jury.

■ We have examined the bill of exceptions and there is ample evidence upon which the chancellor found that there was a contract, that it had been breached and that the defendants were indebted to complainant in the amount stated. The finding of facts by the Chancellor which we think is supported by the evidence is as follows:

"In this cause we find the following facts and have come to the following conclusions:

"I find that in September, 1937, it was agreed by the defendants that if complainant would locate his saw mill at Baxter, Tenn., purchase logs and timber and saw same into lumber, and stack the lumber on the mill yard at said place that defendants would pay complainant $20.00 per M. for #3A common and better at the mill yard. The defendants further agreed to furnish to complainant in advance money to assist him in the purchases of said timber and to cut same into lumber. That pursuant to said agreement complainant moved his saw mill to Baxter, purchased a considerable quantity of timber, paid for same and begun to cut and saw said timber into lumber and stack it on the mill yard at Baxter.

"I find that on September 17th, 1937, the defendant advanced to complainant the sum of $1,350.00, and on March 4, 1938, the sum of $200.00 and likewise on April 29, 1938, the sum of $75.00 for the purpose stated above.

"I find that defendants failed to take up the lumber as cut and stacked by complainant and that on or about April 28, 1938, complainant delivered to defendant at its plant in Monterey 9147 feet of lumber at which time the defendants refused to pay for same at the rate of $20.00 per M. but graded said lumber and paid for it as shown in exhibit 'C' to testimony of J. H. Walker. Thereafter and on June 30th, 1938, complainant paid to defendants the sum of $1,462.17 which sum together with the sum of $162.83 credit for lumber repaid defendants for all advancements. At this time both parties overlooked the fact that at the time complainant should have been given a credit for $63.00 which was due him for a bill of lumber purchased from Bill Herd by complainant for defendants.

"I find that when defendants refused to take up the lumber and pay for it at $20.00 per M. they breached their contract with complainant, and that at that time complainant had on hands approximately 150,000 ft of lumber which defendants were under obligation to take.

"I find that at the time complainant paid to defendants the said sum of $1,462.17 it was not contemplated by the parties to settle any claim that complainant had for damages for breach of contract on the part of defendants.

"The claim for $200.00 for timber that was permitted to rot in the woods will be disallowed for the reason that complainant insists that this loss occurred for lack of funds to operate, but he does not show that defendants refused to advance any funds requested. It is proper here to state that defendants never agreed to advance any specific sum, neither did they agree to purchase any specific amount of lumber, but they were under obligations to purchase all lumber produced by complainant to the time they notified complainant that they would not pay the amount they agreed to pay when the contract was entered into.

"Complainant it appears did all that was required of him to minimize the damage suffered by the breach of the contract.

"It appears that the lumber market fell during the latter part of the year 1937, and the first of the year 1938. The proof show that because of the failure of the defendants to take up the lumber when they should have taken it up it deteriorated and for this reason there was approximately 15000 feet unfit for market the value of which I fix at $20.00 per M. I find that complainant put 135000 M feet on the market at approximately $15.00 P M, which was $5.00 below the contract price with the defendants.

"Complainant will be granted a decree for $1,038.00 and the cost of the cause.

"J. H. Wallace, Chancellor."

We concur in this finding of facts by the Chancellor.

It is insisted for the defendants that the Chancery Court does not have jurisdiction to try this case. This position cannot be maintained. The Chancery Court has jurisdiction to award unliquidated damages for the breach of a contract. See Gibson, Sec. 28 and Sec. 1076.

It is also claimed for the defendants that all matters between these parties were settled when the complainant paid the defendants the sum of $1,462.17. The proof does not justify this contention. The complainant repaid the defendants the amount due them for money advanced to him and this repayment to them did not contemplate any settlement of the matters involved in this case in connection with the breach of the contract to purchase lumber.

It results therefore that all the assignments of error are overruled and a decree will be entered here giving a judgment in favor of complainant and against the defendants and the surety upon the appeal bond for the sum of $1,038 and interest from December 17, 1940, and the costs of the cause, which judgment will be credited with the sum of $63 paid in by the defendant and this amount is ordered paid to the complainant by the Clerk and Master.

Affirmed.

Crownover, P. J., and Felts, J., concur.

On Petition to Rehear.

HOWELL, J. This cause is before the Court upon a petition to rehear filed by the defendants.

This was a suit for damages for the breach of a contract to purchase lumber. The defendants answered and denied that they had any contract with complainant and averred that they had a settlement in full with him for lumber they had purchased from him.

The complainant had alleged in his bill among other things the following:

"Complainant would further state and show to the court after he had gone to considerable expense, in buying new machinery and properly equipping his mill, so as to carry out the said contract as agreed, he purchased much timber and logs and manufactured according to contract much lumber and stacked same according to contract on his mill yard, and was going forward with said agreement and contract when considerable change came in the market for lumber, the market going off when the price of lumber was reduced, at least, $5.00 or more on the thousand.

"These defendants then notified complainant that, they would not take any lumber from him on the price agreed upon and abandoned and refused to carry out their contract.

"In addition to the lumber which had been cut and stacked by the complainant as before shown he was ready and willing and prepared to go forward and carry out the contract as agreed and according to their contract and agreement he would have cut about 500,000 more feet of lumber and at the price agreed to be paid by defendants, he would have cleared $5.00, or about that per thousand on all of said lumber."

The bill then prayed for damages for their failure to live up to the contract, and for such other orders references and decrees as may be necessary to effect the ends of justice and for general relief.

The Court found that there was a contract and it had been breached and that complainant had been damaged to the extent of $1,038 and gave a judgment against the defendants for that amount.

The petition to rehear is based upon the theory that the bill did not pray for a decree for damages for the failure of the defendants to take and pay for, under the contract, lumber that had been already manufactured and was upon complainant's yard. The allegations of the bill quoted above cover this question.

No demurrer or plea or motion for more specific allegations was made in the lower Court and no question as to sufficiency of the pleadings raised at the hearing upon the appeal.

We are of the opinion that the pleadings are sufficient to justify the decree of the Court, and there being no other contentions in the petition or brief and argument in support of same, not fully presented

upon the hearing of the cause and considered by the Court at that time, the petition to rehear is dismissed at the cost of petitioners.
Dismissed.
Crownover, P. J., and Felts, J., concur.