ROBERTS, Chief Justice
(concurring in part and dissenting in part).
I agree to that part of the majority opinion relating to the reservation of jurisdiction for the purpose of entering orders affecting the custody of the child and requiring the mother to contribute to the cost of his support, care, maintenance and education. I find it necessary, however, to dissent from that portion of the opinion respecting the property rights of the parties, for the following reasons:
It is the rule in this state, as indicated by the Chancellor, that where property is purchased by the husband and deeded to the husband and wife jointly, thus creating an estate by the entireties, there is a presumption that the property was intended as a gift to the wife. O’Connell v. O’Connell, Fla., 45 So.2d 882. And it is held by some courts that, even in the absence of false representations or promises, there is an implied condition to such a gift that the wife will continue to live with the husband and perform her marital duties. Moore v. Moore, 51 App.D.C. 304, 278 F. 1017; Murdock v. Murdock, 49 Cal.App. 775, 194 P. 762; Dickerson v. Dickerson, 24. Neb. 530, 39 N.W. 429; York v. Ferner, 59 Iowa 487, 13 N.W. 630. Thus, it appears to be well settled that a 'court of equity is justified in setting aside a transfer of property theretofore made by the husband to the wife because of the subsequent adultery of the wife, Thomas v. Thomas, 27 Okl. 784, 109 P. 825, 113 P. 1058, 35 L.R.A.,N.S., 124; Moore v. Moore, supra, McCalla v. Rogers, 173 Tenn. 239, 116 S.W.2d 1022; Walsh v. Walsh, 372 Ill. 254, 23 N.E.2d 341; Evans v. Evans, 118 Ga. 890, 45 S.E. 612; or because of her abandonment of her husband without cause, Dickerson v. Dickerson, supra; Meldrum v. Meldrum, 15 Colo. 478, 24 P. 1083, 11 L.R.A. 65, although it appears to be held that the intention to abandon must exist at the time of the conveyance. It also appears to be generally held that “If at the time of the transfer or gift of property to one spouse by the other, by way of gift or postnuptial settlement, the former does not contemplate keeping the marriage vows and the intention to violate them is subsequently carried out, the weight of authority supports the proposition that this conduct constitutes such a fraud on the innocent spouse in the inception of the transaction as will be a ground for avoiding it.” 29 A.L.R. page 210, note. The Appellate Court of Indiana has adopted the rule that “where a wife has proved recreant to her marriage obligations and has destroyed the marital union by her misconduct, the court granting a divorce to the injured husband may allot to him such portion of the property previously settled upon the wife by the husband as will place him, as near as may be, in the same position as he would have occupied had the marriage continued.” Keaton v. Keaton, 87 Ind.App. 39, 158 N.E. 251, 252; Blagetz v. Blagetz, 109 Ind.App. 662, 37 N.E.2d 318; Radabaugh v. Radabaugh, 109 Ind.App. 350, 35 N.E.2d 114. See also on this general question the cases of Baird v. Baird, Mont., 232 P.2d 348; Southern Ohio Sav. Bank & Trust Co. v. Burkhart, 148 Ohio St. 149, 74 N.E.2d 67; Hendrickson v. Hendrickson, 95 Cal.App. 487, 272 P. 1079.
In the instant case, there is an intimation in the testimony of two of the neighbors that the appellant might have been guilty of meretricious relations with other men, and the testimony of Mr. Copeland strongly indicates that testimony of this nature could have been produced, had he not been unwilling to blacken the character of the mother of his child. But there is no real substantial evidence along this line. The lower court found that, by her conduct, the appellant had “abandoned” the marital dom- *857 Idle, but it was not made- to appear that it was her intention to repudiate her marital obligations at the tinje.the conveyances were made. It is clear, however, from what has been said before, that the appellant’s conduct, was such as would have eminently justified the Chancellor in entering ■a'decree granting a divorce to Mr. Copeland and awarding to him the custody of the child, had Mr. Copeland survived; and under the particular circumstances of this case, we think that, in the exercise of his authority to adjudicate the property rights, of the parties to a divorce, the Chancellor could properly have entered a decree along the same general lines as he did, in fact, enter. And the fact that Mr. Copeland •did not survive for the entry of such decree ■should not and'does not change the respective rights of the appellant and Mr. Copeland’s estate in and to such property, and the question of the appellant’s rights therein must be. auswered as though he had survived.,
The writer does not wish to advocate a general rule that where a husband is granted a divorce because of the miscon•duct of the wife, a court of equity may in all cases require the wife to reconvey to the husband property which the parties held during the marriage as tenants by the entirety ; but I have no doubt that cases may arise in which such a disposition of the property is required. And I think that the particular circumstances here present make •out such a case.
As above noted, at the time of their marriage, Mr. Copeland was 61 years of age, and the appellant was 29 years his junior. As an earnest of his total acceptance of' the good faith of the appellant in undertaking a marital venture under such disparate age 'conditions, he endowed' his bride with a portion of his savings representing more than a quarter of a century of labor. During their marriage, he- spent $15,000' on doctors’ and hospital bills in an attempt to rehabilitate the appellant so that she could fulfill her duties as a wife and mother; he contributed generously to her support during the years preceding the instant suit, when the parties were residing separate and apart as a result of the appellant’s misconduct; he was compelled to employ a couple during that time (Mr. and Mrs. Snow) to care for his child and his home — that is, to perform in these respects the duties customarily performed by a wife. In doing all of these things, he exhausted the remainder of his life’s savings, so that the property in question comprised almost all of his estate — the only remaining resources to support his Child until he attained manhood. On her part, the appellant progressively contributed disillusionment and frustration and heartbreak. Had Mr. Copeland survived, it would have been the final dash of bitters in a cup of marital hemlock to require him to relinquish to the appellant one-half of all that he possessed; under the circumstances as they presently exist, it would simply compound the tragedy if, added to the loss of his father, .the child should also lose the resources which his father hoped to leave for his support. I do not think a court of equity is required to reach such an unjust conclusion.
Accordingly, I would, hold that, under the circumstances of this case, it was not error to divest the appellant of the property in question.